**MING LAM SUI, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Docket No. 00–4061.**

United States Court of Appeals, Second Circuit.

Argued March 19, 2001.

Decided May 11, 2001.

Theodore N. Cox, New York, NY, for Petitioner.

Meredith E. Kotler, New York, NY (Mary Jo White, United States Attorney for the Southern District of New York, Gideon A. Schor, of counsel), for Respondent.

Before: FEINBERG, NEWMAN, and SACK, Circuit Judges.

FEINBERG, Circuit Judge:

Ming Lam Sui (Sui) petitions for review of a Board of Immigration Appeals (BIA) decision dismissing his appeal of a removal order issued by an immigration judge (IJ) who found Sui deportable as an alien convicted of an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii). Specifically, the IJ and the BIA found that Sui had been convicted of an attempt to commit an offense that involves fraud or deceit in which the loss to victims exceeds $10,000 and thus had been convicted of an aggravated felony as defined in 8 U.S.C. §§ 1101(a)(43)(M)(i), 1101(a)(43)(U).

## I. Background

### A. *Sui's federal conviction*

Sui immigrated to the United States from China in 1990 when he was 15 years old. In May 1997, in the United States District Court for the Western District of Wisconsin, he pleaded guilty to a one-count indictment charging him with knowingly and unlawfully possessing counterfeit securities with the intent to deceive another in violation of 18 U.S.C. § 513(a). Specifically, the indictment alleged that Sui possessed approximately 227 counterfeit Chase Visa traveler's checks with a total face value of approximately $22,700. The Presentence Investigation Report (PSR) prepared in connection with Sui's sentencing described the underlying circumstances of Sui's conviction as follows. In February 1997, Wisconsin State Troopers stopped a car in which Sui and a companion were traveling near Eau Claire, Wisconsin, after the troopers clocked it at 82 miles per hour. When the troopers approached the car, they noted that it was filled with "a large amount of merchandise, shopping bags, and cartons of cigarettes." The troopers asked if they could search the car for drugs or large sums of money, and Sui consented. Ninety-eight $100 Chase Visa traveler's checks were found in the car, and a call to Visa established that the checks were counterfeit.

Sui and his companion were arrested, and 105 $100 checks were found on Sui in a search incident to arrest. During booking, a further 23 $100 checks were found in Sui's possession. The Secret Service subsequently recovered 47 $100 checks that had been passed by Sui and his companion at 13 businesses in Wisconsin. Not all the counterfeit checks cashed by Sui were recovered by the Secret Service, but three more victim businesses were identified, with losses of $1,769.43.[1]

According to the PSR, Sui told the Probation Office that he was on his way to a

---

1. The indictment addressed only the 227 checks found in the vehicle and on Sui's person; it did not reflect the 47 checks recovered by the Secret Service or the other identified losses.

shopping mall in Minnesota with the checks. Sui's companion indicated that they planned to buy as much merchandise as possible at the Minnesota mall and then bring it back to New York to sell it. Sui did not object to these portions of the PSR. In July 1997, Sui was sentenced to 16 months imprisonment and ordered to pay $8,664.43 in restitution.

## B. Immigration proceedings

As a result of this conviction, the Immigration and Naturalization Service (INS) instituted removal proceedings against Sui, charging that he was subject to removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) [2] as an alien who had been convicted of an aggravated felony as defined in the Immigration and Naturalization Act (INA), 8 U.S.C. § 1101(a)(43).[3] That definition section of the INA lists 21 subsections, each identifying one or more offenses qualifying as an "aggravated felony." However, the initial INS document charging Sui, dated October 29, 1997, did not identify the particular aggravated felony statutory subsection under which the INS sought Sui's removal. In July 1998, the IJ, rejecting the INS position, determined that Sui's conviction did not fall within the definition

of an aggravated felony contained in subsection (D) of § 1101(a)(43), that is, "an offense described in section 1956 of Title 18 (relating to laundering of monetary instruments) or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific unlawful activity) if the amount of the funds exceeded $10,000." The IJ then adjourned the hearing to give the INS time to amend the charging document to identify other charges that would qualify as an "aggravated felony."

On December 9, 1998, the INS served a new charging document on Sui, which alleged that he was subject to removal as an alien convicted of an aggravated felony as described in subsection (M)(i) of § 1101(a)(43), that is, "an offense that involves fraud or deceit in which the loss to . . . victims exceeds $10,000." Thereafter, at a hearing in March 1999, the IJ also asked for briefing regarding (1) whether the conviction fell under subsection (G) as a theft offense or burglary offense for which the term of imprisonment is at least one year and (2) whether the conviction might fall under any other subsection of § 1101(a)(43).[4]

---

**2.** Section 1227(a)(2)(A)(iii) states, "Any alien who is convicted of an aggravated felony at any time after admission is deportable."

**3.** The portions of § 1101(a)(43) relevant to this opinion are as follows:

The term "aggravated felony" means . . .
(D) an offense described in section 1956 of Title 18 (relating to laundering of monetary instruments) or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific unlawful activity) if the amount of the funds exceeded $10,000; . . .
(G) a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year; . . .
(M) an offense that—

(i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or
(ii) is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000; . . .
(U) an attempt or conspiracy to commit an offense described in this paragraph.
The term applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years.

**4.** The IJ also indicated that at the next hearing he would rule on whether Sui's conviction fell under subsection (F), but this seems best understood as a slip of the tongue or a tran-

In May 1999, the INS submitted a brief to the IJ arguing that Sui was removable both under subsection (G) and under subsections (M)(i) and (U) of § 1101(a)(43). Subsection (U) provides that a conviction for "an attempt or conspiracy to commit" any of the offenses described in the other 20 subsections of § 1101(a)(43) is an aggravated felony conviction. Although the actual loss to victims in Sui's case was only $8,664.43, the INS argued that Sui's conviction should be understood as an attempt to undertake a crime of fraud or deceit in which the loss to victims would exceed $10,000. Sui responded to these arguments in writing and at a hearing in early June. On June 23, 1999, the IJ held in a written opinion that even though the actual loss to victims in Sui's case was less than $10,000, Sui's conviction constituted an aggravated felony under subsections (U) and (M)(i), considered together, as an attempt to commit an offense involving fraud or deceit in which the loss to victims would be over $10,000. In addition, the IJ rejected the INS's subsection (G) argument. The IJ thereafter ordered Sui's removal, and Sui's motion for reconsideration was denied. The BIA accepted the IJ's analysis and dismissed Sui's appeal. This petition for review followed.

## II. Analysis

In his petition, Sui argues to us principally that he is not removable under subsection (U) of § 1101(a)(43) as it relates to subsection (M)(i) because even if his conduct in fact constituted an attempt to defraud victims of more than $10,000, he was not convicted of an offense denominated as an "attempt," and therefore subsection (U) is inapplicable. He also argues that the INS charging documents failed to notify

him of the charges against him in violation of the Constitution and federal regulations. Because we conclude, for reasons somewhat different from Sui's, that Sui is not removable pursuant to subsection (U), we do not reach the constitutional question.

### A. Jurisdiction

■■■ The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) stripped the federal courts of jurisdiction to review any final removal order against an alien "who is removable by reason of having committed" an aggravated felony. 8 U.S.C. § 1252(a)(2)(C). However, this court retains jurisdiction to review the underlying jurisdictional fact at issue—namely, whether Sui has been convicted of an aggravated felony. *Bell v. Reno*, 218 F.3d 86, 89–90 (2d Cir.2000). The jurisdictional inquiry thus merges with the question on the merits: If Sui is in fact removable because he was convicted of an aggravated felony as defined by subsection (U) and subsection (M)(i), we must dismiss his petition for lack of jurisdiction, while if he is not removable under these subsections, we may exercise jurisdiction and vacate the order of removal. *See id.; Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir. 2000).

### B. Waiver

■■ Before turning to the merits, we must address the INS's contention that Sui has waived his argument regarding the inapplicability of subsection (U). The INS asserts that Sui never claimed before the IJ or the BIA that subsection (U) did not apply to him because he had not been

scription error, since subsection (F) refers to "a crime of violence ... for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). Sui's crime was clearly not a crime of violence, and subsection (F) was not addressed at any subsequent hearing.

formally convicted of an "attempt" to commit a crime.

During the INS proceeding, in reply to the INS's contention that under *In Re: Onyido*, Int. Dec. No. 3379, 1999 WL 126436 (BIA Mar. 4, 1999), Sui was removable pursuant to subsection (U), he argued that *Onyido* was not controlling in his case. Sui's argument stressed that in *Onyido*, the alien found deportable under subsection (U) had actually presented a fraudulent insurance claim for payment, thus taking a "substantial step" toward commission of the ultimate fraud, rather than merely possessing the fraudulent materials. Sui also argued in his brief that in *Onyido*, attempt was a lesser included offense of the fraud crime of which the alien had been convicted, which was not true in Sui's case. Similarly, in oral argument before the IJ, Sui's counsel emphasized the difference between Sui's possession of counterfeit checks and Onyido's actions, arguing that possession, in contrast to presenting a false claim, did not constitute a "substantial step" toward commission of the fraud crime. While Sui did not explicitly argue before the IJ that he had not been formally charged with the crime of "attempt," he clearly argued that his conviction did not constitute an attempt under subsection (U), and he also argued that attempt was not a lesser included offense under his statute of conviction.

In his appeal to the BIA, Sui simply stated that "[t]he IJ erred as a matter of law by finding that respondent is an aggravated felon and pretermitting all applications for relief" and noted that he reserved all constitutional issues. He did not file a memorandum in support of his appeal prior to the deadline set by the BIA.[5] Never-

theless, by filing his appeal and arguing that the IJ erred as a matter of law in finding that Sui was an aggravated felon, which the IJ found pursuant to subsection (U), we find that Sui sufficiently preserved his argument that his conviction did not constitute an "attempt." This conclusion is supported by the decision of the BIA, which explicitly addressed whether Sui's actions constituted an "attempt" to commit the fraud defined in subsection (M)(i). We therefore find that Sui has not waived his arguments regarding the applicability of subsection (U).

## C. Standard of Review

Our research has disclosed no published opinion considering whether an alien may be removed pursuant to subsections (U) and (M)(i) when he or she has not been convicted specifically of an offense formally denominated as an "attempt," but only of another offense involving fraud or deceit, where the facts related to that other offense arguably permit the conclusion that he or she did attempt to defraud victims of more than $10,000. A divided BIA, however, answered this question in the affirmative by a vote of 10 to 5 in *Onyido*, holding that an alien who was convicted of submitting a false insurance claim in the amount of $15,000 with intent to defraud was deportable under subsection (U) and subsection (M)(i) although no actual loss had occurred and the alien had not formally been convicted of an "attempt" to commit a crime. Int. Dec. No. 3434 at 3–4. In affirming the IJ's decision in the present case, the BIA relied on *Onyido*, and the INS argues that the BIA's interpretation of the INA in *Onyido* and in the present case is entitled to defer-

---

**5.** Sui's counsel submitted a brief and a motion to accept the memorandum out of time on November 10, 1999, more than two weeks after the October 25, 1999, deadline, asking

that the BIA accept the brief out of time because counsel's wife had given birth to a child on October 23. The BIA denied the motion to accept the brief and returned it.

ence under Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Sui, on the other hand, argues that the question of whether he is removable pursuant to subsection (U) is a "pure question of law" and thus subject to *de novo* review. The first question we must face, therefore, is the level of deference to which the BIA's conclusions and interpretations are entitled in this case.

■ As is well-established, *Chevron* requires reviewing courts to defer to an agency's interpretation of the statute it administers when the intent of Congress is unclear and the agency's interpretation is reasonable. See *Bell v. Reno*, 218 F.3d at 90. Nevertheless, several circuits have concluded, either implicitly or explicitly, that the BIA's determination that a particular conviction qualifies as an aggravated felony is entitled to no particular deference. See *Lara–Ruiz v. INS*, 241 F.3d 934, 939 (7th Cir.2001); *Lopez–Elias v. Reno*, 209 F.3d 788, 790 (5th Cir.2000); *Albillo–Figueroa v. INS*, 221 F.3d 1070, 1072 (9th Cir.2000); *Coronado–Durazo v. INS*, 123 F.3d 1322, 1324 (9th Cir.1997); *Ramsey v. INS*, 55 F.3d 580, 582 (11th Cir.1995); but see *Le v. United States Attorney General*, 196 F.3d 1352, 1353 (11th Cir.1999). The Ninth Circuit comes to this conclusion by reasoning that since the BIA has no special expertise in interpreting state and federal criminal statutes and since interpretation of these statutes has not been consigned to BIA's discretion, reviewing courts do not owe deference to the BIA's analysis of these statutes and their application to the immigration laws. *Albillo–Figueroa*, 221 F.3d at 1072; *Coronado–Durazo*, 123 F.3d at 1324; but see *Luu–Le v. INS*, 224 F.3d 911, 913 (9th Cir.2000). Other circuits have held that since the question of whether a conviction is an aggravated felony is a jurisdictional

analysis under the IIRIRA, the issue is reviewed *de novo*, since "the determination of ... jurisdiction is exclusively for the court to decide." *Lopez–Elias*, 209 F.3d at 791; see also *Lara–Ruiz*, 241 F.3d at 939.

While this court has not previously addressed the role of *Chevron* deference in reviewing an aggravated felony determination made by the BIA, it has recently considered analogous questions in reviewing the BIA's determination that an alien was removable pursuant to 8 U.S.C. § 1227(a)(2)(E)(i) because he had been convicted of a "crime of domestic violence," *Sutherland v. Reno*, 228 F.3d 171, 173–74 (2d Cir.2000), and pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) because he had been convicted of multiple "crimes involving moral turpitude," *Michel v. INS*, 206 F.3d 253, 262 (2d Cir.2000). In *Michel*, we affirmed the BIA's interpretation of the term "moral turpitude" under the *Chevron* standard, finding that the BIA had considered its interpretation in a reasoned and detailed fashion and that its interpretation was reasonable. 206 F.3d at 262–63. Nevertheless, in determining whether the elements of a conviction under New York law for possession of stolen property met the BIA's interpretation of "moral turpitude," we undertook *de novo* review. This is because "where the BIA is interpreting ... the INA, *Chevron* deference is warranted, but where the BIA is interpreting state or federal criminal laws, we must review its decision *de novo* " since the BIA is not charged with the administration of these laws. *Michel*, 206 F.3d at 262. This conclusion was reaffirmed in *Sutherland*, 228 F.3d at 174–75.

■■ We believe the reasoning set out in *Michel* and *Sutherland* is equally applicable here. The BIA has made two subsidiary decisions in determining that Sui has committed an aggravated felony. First, the BIA has determined that subsection

(U) does not use the word "attempt" to mean conviction of an offense formally denominated as an attempt, but instead means conduct that satisfies a generally accepted definition of an attempted offense. Second, the BIA has, in effect, determined that the offense for which Sui was convicted under 18 U.S.C. § 513(a) meets the BIA's interpretation of an attempt. The first decision involves a construction of subsection (U) entitled to *Chevron* deference if reasonable. The second decision, as in *Michel* and *Sutherland*, does not, and we review it *de novo*.[6]

### D. Merits

■ The broad question before us is whether, as the BIA and IJ found, Sui's conviction for possession of counterfeit securities constitutes an attempt to commit an offense involving fraud or deceit in which the loss to victims is greater than $10,000, pursuant to subsections (U) and (M)(i) of § 1101(a)(43). As just indicated, this broad question involves two subsidiary questions: what is the meaning of "attempt" in subsection (U) and does Sui's underlying conviction fall within that definition?[7] The first step in determining whether the BIA's interpretation of subsection (U) in this context is entitled to

deference is to ask whether "Congress has directly spoken to the precise question at issue," *Chevron*, 467 U.S. at 842, 104 S.Ct. 2778, since neither an agency nor the courts may disregard clear Congressional intent. The INA states that "Any alien who is convicted of an aggravated felony at any time after admission is deportable," 8 U.S.C. § 1227(a)(2)(A)(iii), and, as noted above, defines "aggravated felony" to include an "attempt or conspiracy" to commit a variety of offenses, including an offense involving "fraud or deceit in which the loss to ... victims exceeds $10,000," 8 U.S.C. § 1101(a)(43)(U), (M)(i). See *supra* note 3. While a conviction is clearly required, the term "attempt" is not defined in the INA, and legislative history does not shed light on the meaning intended by Congress.

■ The second step of the *Chevron* analysis requires us to consider whether the BIA's interpretation of the statute was reasonable. In rejecting Sui's appeal, the BIA briefly analyzed whether Sui's conviction was properly categorized as an "attempt," concluding that Sui possessed counterfeit checks with the intent to deceive and that it was irrelevant that no actual fraud occurred.[8] This discussion

---

**6.** It is perhaps arguable that in determining whether Sui's offense constituted an attempt, the BIA engaged in ordinary historical fact-finding by an administrative agency, which is traditionally entitled to deference if supported by substantial evidence. See, *e.g., Valicenti Advisory Servs., Inc. v. SEC*, 198 F.3d 62, 64–65 (2d Cir.1999). However, the INS does not so argue. Moreover, even if the INS did argue that the BIA's determination here was the sort of fact-finding generally entitled to deference, we would not agree that the BIA is entitled to undertake such fact-finding in this context, as will be seen below. See *infra* note 10 and accompanying text.

**7.** At oral argument, counsel for the INS characterized the relevant question as whether the

crime of which Sui was convicted "fit within" the definition of an aggravated felony.

**8.** The BIA's analysis on this point, in full, is as follows:

Section 101(a)(43)(U) of the Act provides that the term "aggravated felony" also includes "an attempt or conspiracy to commit an offense described in (section 101(a)(43))." Here, the offense for which the respondent was convicted involves possession of $22,700 worth of counterfeit securities with the intent to deceive another person or organization. The conviction record shows that the respondent possessed travelers checks with the intent to exchange them with unsuspecting victims for either cash or items of value. The fact that the

does not clearly explicate the manner in which the BIA interpreted "attempt," though it necessarily implies that the BIA concluded that "attempt" as used in subsection (U) need not be limited to convictions under statutes setting out crimes formally labeled "attempts." [9]

■ Sui disputes the appropriateness of this conclusion, arguing that "attempt" must be understood only to refer to the substantive offense of attempt, rather than to convictions for other crimes that might involve facts showing an attempt to commit another listed offense. Nevertheless, to the extent that the BIA's rationale rests on the conclusion that Congress did not intend to allow the INA's definition of "attempt" to vary solely according to the labels applied by the jurisdiction in which an alien was charged, we find it reasonable. As the INS points out, the Supreme Court addressed an analogous issue in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), when it considered whether the term "burglary," as used in a federal sentence enhancement statute, meant "burglary" however a jurisdiction chose to define it, or was instead premised upon a uniform definition of the crime, which might not include some offenses formally labeled "burglary." See *id.* at 579–80, 110 S.Ct. 2143. The Court concluded that it was "implausible that Congress intended the meaning of 'burglary' . . . to depend on the definition adopted by the State of conviction," since such a conclusion would mean that exactly the

same conduct could have different results for sentencing if state labeling schemes varied. *Id.* at 590, 110 S.Ct. 2143. Indeed, the general rule is that unless Congress gives plain indication to the contrary, federal laws are not to be construed so that their meaning hinges on state law, "because the application of federal legislation is nationwide and at times the federal program would be impaired if state law were to control." *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103, 119–20, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). We agree that in the aggravated felony context, "[p]ronouncing a flower to be a rose . . . does not necessarily make it one." *Drakes v. Zimski*, 240 F.3d 246, 248 (3d Cir.2001). Thus, whether or not it would be reasonable for the BIA to interpret the INA as attaching varying immigration consequences to convictions based only on the labels given to them by various jurisdictions, it is clearly reasonable for the BIA to proceed under the theory that the label given to the offense by the charging jurisdiction is not alone determinative of its status as an aggravated felony.

If the label given to the offense is not determinative, however, the BIA must offer an alternative yardstick by which to determine whether a conviction renders an alien removable under the aggravated felony provision. There is no general statutory definition of criminal "attempt" in the federal system that we may assume the BIA used, but *Onyido*, relied on by the

respondent failed to actually defraud another person or organization is of no consequence under section 101(a)(43)(U) of the Act, which prescribes deportability as an aggravated felon for aliens convicted of an attempt or conspiracy to commit an offense described in section 101(a)(43) of the Act. *See Matter of Onyido*, Interim Decision 3379 (BIA 1999).

9. This conclusion is consistent with BIA precedent and practice. See, *e.g., In re: Cram-*

*mond*, Int. Dec. No. 3443, 2001 WL 312775 (BIA March 22, 2001) (finding the definition of "felony" in aggravated felony provision not dependent on state labeling systems); *In re: Rodriguez–Rodriguez*, Int. Dec. No. 3411, 1999 WL 731793 (BIA Sept. 16, 1999) (finding conviction for "indecency with a child by exposure" to constitute "sexual abuse of a minor" under aggravated felony provision).

BIA in the present case, provides some insight into the BIA's definition of "attempt." There, the BIA considered a conviction under an Indiana statute that proscribed the presentation of false insurance claims with an intent to defraud. Int. Dec. No. 3379 at 2. The BIA noted that the statute did not require proof of loss, and therefore concluded that it encompassed both successful frauds and unsuccessful attempts to defraud an insurance company. *Id.* at 3. The BIA then cited an Indiana case involving a conviction under the state's generic attempt statute for the proposition that all that was necessary to show attempt to defraud under Indiana law was an intent to defraud plus the occurrence of a "substantial" step toward the commission of the fraud. *Id.* The BIA concluded that the record of conviction demonstrated that both elements were present in Onyido's case. *Id.* at 3–4.

It is, somewhat unclear whether the BIA meant by this analysis to indicate that it was adopting Indiana's definition of attempt only because this was an Indiana conviction, thus implying that it might apply a different definition of attempt in another case, or whether it meant that the Indiana requirements of intent plus a substantial step were the elements of a generic definition of attempt that it would apply in every such case. Nevertheless, we believe the latter to be the more likely rationale underlying the BIA's *Onyido* decision, given the above-noted preference in statutory construction for avoiding interpretations of federal law that hinge on state law, see *Dickerson,* 460 U.S. at 119–20, 103 S.Ct. 986, and given the BIA's general practice of "apply[ing] a federal standard in determining whether a state offense fits within the aggravated felony definition," *In re: V–Z–S–,* Int. Dec. No. 3434, 2000 WL 1058931, at *8 (BIA Aug. 1, 2000). We believe that this *generic definition* of "attempt" by reference to the presence of

criminal intent and the completion of a substantial step toward committing the crime is a reasonable interpretation of the statutory term.

Indeed, even were we to conclude that the BIA's consideration of the appropriate definition of "attempt" as used in subsection (U) was not sufficiently reasoned and detailed to command deference, see *Michel,* 206 F.3d at 263 (quoting *Chevron,* 467 U.S. at 865, 104 S.Ct. 2778), we would adopt the same definition ourselves. See generally *Drakes,* 240 F.3d at 250 (finding it unnecessary to determine the level of deference to pay to the BIA's "scant analysis and somewhat barebones conclusion" when the court agreed with the BIA in the result). Given the absence of a general federal statutory definition of attempt, the most likely sources for a generic definition of "attempt" are common law and the Model Penal Code. "The classical elements of an attempt are intent to commit a crime, the execution of an overt act in furtherance of the intention, and a failure to consummate the crime." *United States v. Stallworth,* 543 F.2d 1038, 1040 (2d Cir. 1976). This court, when previously considering what must be shown to demonstrate attempt, has derived from this classic test a two-pronged inquiry: (1) has the defendant acted with the culpability otherwise required for the commission of the crime he or she is charged with attempting and (2) has the defendant engaged in conduct that constitutes a substantial step toward the commission of the crime and that is strongly corroborative of the actor's criminal purpose? *Id.; United States v. Ivic,* 700 F.2d 51, 66 (2d Cir.1983), overruled in part on other grounds by *National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). This is substantially the approach undertaken in the Model Penal Code, and represents a standard "more inclusive than

one requiring the last proximate act before attempt liability would attach, but less inclusive than one which would make every act done with the intent to commit a crime criminal." *United States v. Jackson*, 560 F.2d 112, 118–19 (2d Cir.1977). The rationale given by this court in adopting a generic definition of "attempt" based on the Model Penal Code's definition would lead us to apply the same definition in this context, as would the rationale given by the Supreme Court in adopting a generic definition of "burglary" in *Taylor* similar to that set forth in the Model Penal Code. 495 U.S. at 598–99, 110 S.Ct. 2143. As in *Taylor*, the modern meaning of "attempt" has evolved from the classic common-law definition of the term, and the elements of intent and a substantial step toward commission set out in the Model Penal Code make up the most commonly used "attempt" definition today.

 Having accepted the BIA's interpretation of "attempt" in subsection (U), we must now consider whether the offense for which Sui was convicted "fits within" that definition. *V–Z–S–*, Int. Dec. No. 3434, at *8; see also note 7, *supra*. On this issue, our review is *de novo*. The INS argues that if Sui had succeeded in reaching the Minnesota shopping mall, he would have cashed the 227 traveler's checks found in his possession, just as he had already begun to cash other counterfeit traveler's checks during his trip from New York. In making this argument, the INS looks behind the statutory description of the offense and the charging document to facts set out in the PSR regarding Sui's destination and his activity in cashing other counterfeit checks on his trip. But the BIA undertook no such factual examination in its affirmance of the deportation order. It simply stated that "[t]he conviction record shows that the respondent possessed travelers checks with the intent to exchange them with unsuspecting victims for either cash or items of value." This appears to be no more than a gloss on the language in Sui's indictment, which stated that Sui "possessed counterfeited securities of an organization, with intent to deceive another person or organization, specifically, . . . approximately 227 counterfeited Chase Visa traveler's checks." Thus, in contrast to the INS's argument, the BIA seems to have examined only the statutory description of the offense and the language of the indictment in determining that Sui was deportable pursuant to subsection (U).

 This approach is consistent with both precedent and sound policy. Both reviewing courts and the BIA have applied a categorical approach in this and analogous contexts, generally looking only to the elements of the offense of conviction and not to the factual circumstances of the crime.[10] Again, the *Taylor* opinion

**10.** Indeed, while arguably the BIA's decision as to whether to consider the facts underlying Sui's conviction is an interpretation of the INA and thus reviewed under *Chevron*, a decision to undertake a factual examination would be neither reasonable nor entitled to deference, for such an approach is contrary to both BIA precedent and the language of the INA, as well as sound policy. In a closely analogous context, the BIA has held that "the principle of not looking behind a record of conviction provides this Board with the only workable approach in cases where deportability is premised on the existence of a convic-

tion." *In re: Pichardo–Sufren*, 21 I. & N. Dec. 330, 1996 WL 230227 (BIA 1996). This categorical approach, focusing only on the elements of the offense of conviction rather than the factual circumstances of the crime, is also the only one consistent with the language of the INA, which renders deportable any alien who has been "convicted" of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), not any alien whom the BIA concludes (in the absence of the protections afforded by a criminal trial) likely committed an aggravated felony. See *Pichardo–Sufren*, 21 I. & N. Dec. 330 (noting

provides valuable guidance. There, in considering the application of a sentence enhancement for the defendant's prior burglary conviction, the Supreme Court considered whether the sentence enhancement statute required the sentencing court to look only to the statutory definition of the prior offense, or whether the sentencing court was also permitted to consider other evidence concerning the defendant's prior crime. 495 U.S. at 600, 110 S.Ct. 2143. The Supreme Court noted that the relevant statute spoke in terms of "convictions," not crimes "committed," suggesting a focus on the statute of conviction rather than the defendant's actions. *Id.* Similarly, in the present case, § 1227(a)(2)(A)(iii) renders deportable an alien who has been "convicted" of an aggravated felony, not one who has "committed" an aggravated felony. See note 10, *supra.* The Court noted in *Taylor* that nothing in the legislative history of the sentence enhancement statute suggested a sentencing court would have to undertake factfinding with the result that sometimes a conviction under a particular statute might count toward enhancement and sometimes it might not. *Id.* at 601, 110 S.Ct. 2143. Here, no legislative history

suggests Congress contemplated a similar factfinding role for the BIA or reviewing courts in ascertaining whether an alien had committed an aggravated felony. Finally, the Court in *Taylor* noted that the difficulties involved in a process that looked beyond the record of conviction were "daunting" for a sentencing court, including a possible need to resolve disputed issues of fact and the inequity of imposing a sentence enhancement on a defendant who had pleaded guilty to a single offense as a result of a plea bargain as though he had pleaded guilty to other crimes. *Id.* at 601–02, 110 S.Ct. 2143. These difficulties are no less daunting in the present context. In *Taylor,* the Supreme Court concluded that the sentence enhancement statute "generally requires the [sentencing] court to look only to the fact of conviction and the statutory definition of the prior offense," though the Court noted that in some instances, an indictment or jury instructions might be relied upon if they demonstrated that the jury had been required to find all the elements of the generic offense set out in the sentence enhancement statute. *Id.* at 602, 110 S.Ct. 2143. The same conclusion is appropriate here.[11] Thus, "[w]e cannot

that such language "mandates a focus on an alien's conviction, rather than his conduct").

**11.** See also, *e.g., Michel,* 206 F.3d at 264 (citing with approval the BIA's practice of taking a categorical approach to determining whether a conviction is a crime of moral turpitude and noting that this promotes uniformity and relieves administrative burdens); *Ye,* 214 F.3d at 1133 (noting that in determining whether a conviction is for a "crime of violence" under the INA, the court generally only looks to the statutory definition of the prior offense, and if necessary, the charging paper and judgment of conviction, but not to the particular facts underlying the conviction); *United States v. Velazquez–Overa,* 100 F.3d 418, 420–21 (5th Cir.1996) (adopting a categorical approach and refusing to consider the conduct underlying the conviction in de-

termining whether alien should receive a sentence enhancement based on conviction of aggravated felony as defined in the INA); *Hamdan v. INS,* 98 F.3d 183, 187 (5th Cir. 1996) (applying categorical rule in determining whether a conviction is a "crime of moral turpitude" under the INA); *United States v. Reyes–Castro,* 13 F.3d 377, 378 (10th Cir. 1993) (adopting a categorical approach and refusing to consider the conduct underlying the conviction in context of determining that alien had committed an aggravated felony and had been properly deported); *In re: Pichardo–Sufren,* 21 I. & N. Dec. 330, 1996 WL 230227 (BIA 1996) ("[T]he principle of not looking behind a record of conviction provides this Board with the only workable approach in cases where deportability is premised on the existence of a conviction.").

go behind the offense as it was charged to reach our own determination as to whether the underlying facts amount to one of the enumerated crimes." *Lewis v. INS*, 194 F.3d 539, 543 (4th Cir.1999).

 Sui pleaded guilty to a violation of 18 U.S.C. § 513(a), which provides, "Whoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of an organization, ... with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than ten years, or both." Generally, courts undertaking a categorical approach look beyond the language of the statute to examine the charging document and the judgment of conviction when the relevant statute includes both conduct that would constitute an aggravated felony and conduct that would not. Cf. *Ye*, 214 F.3d at 1133 (using this approach in determining whether a conviction qualifies as a "crime of violence" under the INA). Because it is conceivable that the determination of whether an alien committed a subsection (U) "attempt" would vary depending on whether he or she had been convicted alternatively of making, possessing, or uttering counterfeit securities, we look to the charging document to determine the particular activity at issue here. The one-count indictment to which Sui pleaded guilty states that on or about February 15, 1997, in the Western District of Wisconsin, Sui and his co-defendant "knowingly and unlawfully possessed counterfeited securities of an organization, with intent to deceive another person or organization, specifically, the defendants possessed approximately 227 counterfeited Chase Visa traveler's checks, each with a face value of $100, for a total face value of approximately $22,700." By pleading guilty, Sui acknowledged that he possessed the securities with an intent to deceive. Therefore, because the underlying facts of Sui's offense may not be examined, the remaining inquiry is whether simple possession of counterfeit securities constitutes a substantial step toward an offense that involves fraud or deceit and results in a loss to victims of more than $10,000. Because possession of counterfeit securities with the mental state that Sui acknowledged by his plea to the indictment itself involves fraud or deceit, the only issue is whether Sui's conviction constitutes a substantial step toward causing a loss that exceeds $10,000.[12]

The INS argues that § 513(a) punishes possession of counterfeit documents that can serve no legitimate purpose and that are instead designed to deceive others. It argues that possession of such materials necessarily constitutes a substantial step toward their use to cause a loss exceeding

---

12. For the purposes of this analysis, we assume that "intent to deceive" is a sufficient showing of intent for the purposes of demonstrating an attempt to bring about a loss to a victim through a crime involving fraud or deceit. We acknowledge that an intent to deceive is not synonymous with an intent to defraud, since "[d]eceive is to cause to believe the false or to mislead[; d]efraud is to deprive of some right, interest or property by deceit," *United States v. Yermian*, 468 U.S. 63, 73 n. 12, 104 S.Ct. 2936, 82 L.Ed.2d 53 (1984), and that an intent to deceive may therefore not include an intent to cause a loss. Nevertheless, this court has previously noted in the context of § 513(a) that it is unclear whether Congress intended any difference in meaning between the phrase "with intent to deceive another person, organization, or government," used in § 513(a), and the phrase "with intent to defraud," used in the majority of the sections of the "Counterfeiting and Forgery" chapter of Title 18, 18 U.S.C. §§ 471–513. *United States v. Thomas*, 54 F.3d 73, 79–80 (2d Cir.1995). Given this precedent and given that the question has not been raised or briefed in the present case, we will assume that the possible distinction between an "intent to deceive" and an "intent to defraud" is not determinative here.

$10,000, and for this contention cites the Model Penal Code, which states that the "possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances," shall not be held insufficient as a matter of law to constitute a substantial step. Model Penal Code § 5.01(2)(e). In other words, the INS argues for adoption of a bright-line rule in which the possession of more than $10,000 in counterfeit securities with an intent to deceive automatically constitutes an attempt to cause a loss exceeding $10,000 through fraud or deceit.

Our precedents suggest that we should be hesitant to adopt such a rule, given that "an understanding of the facts is critical to any consideration of inchoate crimes," *Stallworth*, 543 F.2d at 1039, and the bright-line test proposed by the INS would make the underlying facts in any such case irrelevant. Indeed, this court has previously specifically held that whether particular conduct constitutes a substantial step toward commission of a crime is "so dependent on the particular factual context of each case that, of necessity, there can be no litmus test to guide the reviewing courts." *United States v. Manley*, 632 F.2d 978, 988 (2d Cir.1980). The Model Penal Code language relied upon by the INS is not to the contrary: It simply indicates that in a case such as Sui's the question of whether a substantial step was undertaken should be allowed to go to the jury. It does not indicate that possession of instruments that can have no lawful use *necessarily* constitutes a substantial step toward commission of a crime; it does not set out a litmus test. See generally *Ivic*, 700 F.2d at 68 (noting that this section of the Model Penal Code is intended to be used to decide whether to send a case to the jury and expressing concern that its use in jury instructions could lead a jury to

decide that it *must* find a substantial step had been committed if it was convinced of the relevant historical facts beyond a reasonable doubt).

It is possible, and even likely, that if Sui had been tried in state court on a charge of attempted fraud instead of mere possession and the prosecution had proven the facts as set out in the PSR, a jury would have found that he had completed a substantial step toward passing the counterfeit traveler's checks and defrauding merchants of more than $10,000. As it stands, however, there has been no such jury finding. Nor did Sui plead guilty to completing a substantial step toward passing the checks and thereby causing a loss that exceeds $10,000; he pleaded guilty only to possession with intent to deceive, which is not necessarily equivalent. The INS asks us to assume the position of factfinder, looking behind the statute of conviction and the indictment to determine whether in the particular circumstances of this case, Sui's acts constituted a substantial step. As discussed above, this is an inappropriate role for a reviewing court or for the BIA to undertake, and we decline the invitation to piece together an underlying attempt conviction by weighing evidence and drawing conclusions in a manner appropriate only for a criminal jury.

Given that possession of counterfeit securities with an intent to deceive does not necessarily constitute an attempt to pass these securities and cause a loss, and given that we take a categorical approach to determining whether convictions constitute aggravated felonies, we find that Sui has not been convicted of an aggravated felony as defined in subsection (U). Nor may he be deported pursuant to subsection (M)(i) alone, since the loss to victims as a result of his actions did not exceed $10,000. Sui therefore is not removable as an alien who has committed an aggravated felony. As a

result, we have jurisdiction over his petition and exercise that jurisdiction to vacate the BIA's order of removal. We see no need to reach the constitutional arguments raised by Sui.

Petition to review granted and order of removal vacated.

Judgment vacated and remanded for jury trial.