Wilberforce KENDALL, Petitioner,

v.

James J. MOONEY, Acting Deputy Assistant District Director, Attorney General of the U.S.A., and the Chief Immigration Officer of the U.S.A., Respondents.

No. 00–CV–555.

United States District Court,
E.D. New York.

July 22, 2003.

Wilberforce Kendall, pro se.

Patrick Shen, U.S. Attorney's Office, for defendant.

## OPINION AND ORDER

GERSHON, District Judge.

Petitioner Wilberforce Kendall filed this habeas corpus petition pursuant to 28 U.S.C. § 2241 on January 27, 2000 challenging his detention by the Immigration and Naturalization Service ("INS"). On March 17, 2000, by endorsed letter, this court granted petitioner's application for a stay pending resolution of that petition. For the reasons stated below, the petition is denied and the stay is lifted.

### Facts

Petitioner, a native of Guyana, was admitted to the United States as a lawful permanent resident on or about December 7, 1986. On January 14, 1997, petitioner was convicted in New York Supreme Court, Queens County (Katz, J.), following a jury trial, of Criminal Possession of Stolen Property in the Fourth Degree pursuant to N.Y. Penal Law § 165.45 and Unauthorized Use of a Vehicle in the Second Degree pursuant to N.Y. Penal Law § 165.05. He was sentenced to concurrent terms of imprisonment of one and one-third to four years for those offenses. On November 30, 1998, the Appellate Division, Second Department, affirmed petitioner's conviction. *People v. Kendall,* 255 A.D.2d 601, 680 N.Y.S.2d 874 (2d Dept.1998). Leave to appeal was denied by the New York Court of Appeals on April 6, 1999. *People v. Kendall,* 93 N.Y.2d 900, 689 N.Y.S.2d 712, 711 N.E.2d 988 (1999). Pe-

titioner thereafter filed a habeas corpus petition with this court pursuant to 28 U.S.C. § 2254 alleging violations of his due process rights arising from the erroneous admission of evidence in his state Supreme Court trial. That petition was denied on July 3, 2001. *Kendall v. Superintendent,* No. 99 CV 3879(NG) (E.D.N.Y. July 3, 2001).

As a result of his state court conviction, on January 11, 1999, the INS issued petitioner a Notice to Appear charging him with being removable from the United States as an alien convicted of an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). On February 22, 2000, petitioner appeared *pro se* before an Immigration Judge ("IJ") in Oakdale, Louisiana. At that hearing, petitioner argued that his filing of a habeas corpus petition with this court rendered his state court conviction non-final for immigration purposes. By decision issued at the hearing, the presiding IJ found petitioner removable as charged. Petitioner thereafter appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). On August 21, 2000, the BIA dismissed petitioner's appeal. Petitioner now challenges the finality of his state court conviction, the applicability of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. 104–32, 110 Stat. 1214, to crimes committed prior to its enactment, and the classification of criminal possession of stolen property as an aggravated felony.

### I. Finality of Petitioner's State Court Conviction

Petitioner first contends that the filing of his habeas corpus petition with this court on July 7, 1999 precluded INS action pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). That argument is without merit. A conviction subject to collateral attack is nonetheless final for the

purpose of immigration review. *Rivas v. INS*, 2003 WL 192556, *2, 2003 U.S. Dist. LEXIS 1093, at *4 (S.D.N.Y.2003). Petitioner's application for habeas corpus relief pursuant to 28 U.S.C. § 2254 has no bearing on the finality of his conviction for immigration purposes. I further note that petitioner's application for habeas corpus relief has since been denied, *see Kendall v. Superintendent*, No. 99 CV 3879(NG) (E.D.N.Y. July 3, 2001), rendering this argument moot.

## II. Applicability of AEDPA

■ In 1996, Congress enacted AEDPA, which amended 28 U.S.C. § 440(d) to eliminate the availability of discretionary relief for aliens who have been convicted of aggravated felonies. Petitioner contends that AEDPA's provisions should not be applied in his case because his crime occurred prior to AEDPA's enactment.

■ Plaintiff failed to raise this claim regarding the availability of discretionary relief in either of his prior immigration proceedings. "A court may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right." 8 U.S.C. § 1252(d)(1); *Rhoden v. Reno*, 6 Fed. Appx. 56,56 (2d Cir.2001); *Maria v. McElroy*, 68 F.Supp.2d 206, 216 (E.D.N.Y. 1999). Failure to exhaust administrative remedies is, of course, excused where (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; or (4) where plaintiff raises a substantial constitutional question which could not be resolved through the administrative process. *See Howell v. INS*, 72 F.3d 288 (2d Cir.1995); *Maria*, 68 F.Supp.2d at 216. None of these exceptions are applicable to petitioner's case.

■ Petitioner claims a violation of his constitutional rights resulting from the application of AEDPA to crimes committed prior to AEDPA's enactment. That argument is without merit. The Supreme Court has recently determined that AEDPA's provisions do not apply to aliens who pled guilty prior to AEDPA's enactment because of the high likelihood that such aliens relied on the availability of discretionary relief in making their decision to plead. *INS v. St. Cyr*, 533 U.S. 289, 326, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001). The provisions of AEDPA continue to apply in their entirety, however, to persons who, like petitioner, committed crimes prior to AEDPA's enactment, but were convicted after AEDPA became law. *Mohammed v. Reno*, 309 F.3d 95, 103 (2d Cir.2002); *Domond v. INS*, 244 F.3d 81, 87 (2d Cir.2001); *Kang v. Reno*, 244 F.Supp.2d 118, 119 (E.D.N.Y.2003). Indeed, the Court of Appeals for the Second Circuit has recently held that AEDPA applies to persons who committed a crime and were convicted by a jury prior to AEDPA's enactment. *Rankine v. Reno*, 319 F.3d 93, 99 (2d Cir.2003); *Theodoropoulos v. INS*, 313 F.3d 732, 739–740 (2d Cir.2002). As the Court of Appeals reasoned in *St. Cyr v. INS*, 229 F.3d 406, 418 (2d Cir.2000), *aff'd*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), "it would border on the absurd to argue that these aliens might have decided not to commit ... crimes, or might have resisted conviction more vigorously, had they known ... they could not ask for a discretionary waiver of deportation." Since petitioner in this case clearly falls within the category of aliens to whom AEDPA applies, the provisions of 28 U.S.C. § 440(d) (as amended by AEDPA) control, and discretionary relief is not available.

## III. Definition of Aggravated Felony

Finally, petitioner challenges his final order of removal on the ground that his conviction for criminal possession of stolen

property is not an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Respondent argues that petitioner has failed to exhaust his administrative remedies in relation to this claim. That argument is without merit. Respondent is correct that, in petitioner's limited presentation to the IJ, the issue of whether his crime constitutes an aggravated felony was not raised. However, the IJ had petitioner removed from the courtroom before petitioner completed his presentation of claims. Tr. at 34. In his *pro se* brief in support of his administrative appeal, petitioner argued that his crime was "a mere trifling, nonviolent conviction, without any miscreant malice." Briefs and Statements by Wilberforce Kendall, A–411–91330, at 3 (February 2, 2000). Although the BIA did not address that claim, finding that petitioner's "sole issue on appeal is whether the respondent's conviction is final for immigration purposes," this court finds that petitioner's pointed reference to the severity of his offense sufficiently raised the claim that his crime does not constitute an aggravated felony for the purpose of securing this court's review.

■ Turning to the merits, a district court owes *Chevron* deference to the BIA's reasonable interpretation of the immigration statutes. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, it reviews *de novo* the BIA's interpretation of federal and state criminal statutes. *Dalton v. Ashcroft*, 257 F.3d 200, 203 (2d Cir.2001); *Michel v. INS*, 206 F.3d 253, 262 (2d Cir. 2000). Accordingly, the question of whether petitioner's crime of possession of stolen property under N.Y. Penal Law § 165.45 constitutes an aggravated felony as the BIA has reasonably interpreted that term is reviewed *de novo. See Sui v. INS*, 250 F.3d 105, 113 (2d Cir.2001).

■ The statutory definition of an aggravated felony includes "a theft offense (including receipt of stolen property) . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G). Petitioner relies on an unpublished BIA opinion, *In re Anthony Emmanuel Thompson*, No. A–30–292–560 (Oakdale, LA June 5, 2000), in support of his argument that the crime of which he was convicted, Criminal Possession of Stolen Property in the Fourth Degree, is not a theft offense within the meaning of 8 U.S.C. § 1101(a)(43)(G). In *In re Thompson*, the BIA concluded, generally, that a possession offense is not properly categorized as either a theft offense or receipt of stolen property and, specifically, that Criminal Possession of Stolen Property in the Fifth Degree under New York law is a divisible statute because it criminalizes both permanent and temporary deprivations of property, only the former of which is properly categorized as a theft offense. For the reasons that follow, I find that precedent to be unpersuasive.

The BIA has subsequently, and more persuasively, held that "the reference to 'receipt of stolen property' in Section 1101(a)(43)(G) of the INA was intended in a generic sense to include the category of offenses involving knowing receipt, possession, or retention of property from its rightful owner." *In re Bahta*, 22 I. & N. Dec. 1381, 1388–1389 (BIA Oct. 4, 2000). That holding was endorsed by the Court of Appeals for the Seventh Circuit in *Hernandez–Mancilla v. INS*, 246 F.3d 1002, 1008–09 (7th Cir.2001). There, the Court found that "the phrase 'theft offense (including receipt of stolen property)' ought to be broadly construed" and, specifically, that possession of stolen property constitutes a theft offense under 8 U.S.C. § 1101(a)(43)(G). While the Court of Appeals for the Second Circuit has not yet considered the specific question presented

by petitioner, it has clearly recognized that the 1996 immigration reform acts "expanded the definition of aggravated felony as it applies to crimes of violence and theft offenses for the clear purpose of bringing more convictions within its ambit." *U.S. v. Pacheco,* 225 F.3d 148, 154 (2d Cir.2000). The Court of Appeals has further indicated that the particular label given to a crime under state law is not determinative of whether or not that crime constitutes an aggravated felony under 8 U.S.C. § 1101(a)(43)(G). *Sui,* 250 F.3d at 114 (defining "attempt" by reference to both state law and Black's Law Dictionary). Instead, as *Sui* makes clear, *id.* at 115, the "yardstick" to be employed in determining whether a particular crime constitutes a particular aggravated felony is whether the elements of that crime under state law conform to a generic definition of the enumerated aggravated felony offense.

Petitioner in this case argues that criminal possession cannot be properly categorized as a theft offense because it neither constitutes an intentional taking (as "theft" is partially defined by Black's Law Dictionary) nor involves receipt of stolen property. That argument is without merit. Petitioner's narrow interpretation of theft offense as an intentional taking is not a reasonable interpretation of 8 U.S.C. § 1101(a)(43)(G), which proscribes "theft offenses (including receipt of stolen property)." Both Black's Law Dictionary and the Model Penal Code define theft as an umbrella term encompassing many crimes.[1] The Model Penal Code defines theft offenses through reference to the elements of intentional deprivation and knowing possession, not through the common law requirement of asportation. *See*

MODEL PENAL CODE §§ 223.1(3) and 223.2. The language of the statute, as well as the weight of the authority, thus compel a finding that the BIA's construction of the term theft offense as encompassing crimes other than intentional taking is reasonable and *Chevron* deference is therefore owed to that construction.

While not entitled to *Chevron* deference, I further find that the BIA's interpretation of N.Y. Penal Law § 165.45 as an enumerated aggravated felony, is correct. New York Penal Law, like the Model Penal Code, has obliterated the common law distinctions between criminal possession of stolen property and receipt of stolen property, a crime explicitly enumerated as an aggravated felony by 8 U.S.C. § 1101(a)(43)(G). The Model Penal Code defines receipt of stolen property as "acquiring possession, control, or title, or lending on the security of the property" and, following the lead of at least 27 states, has eliminated the common law requirement of knowledge at the time of receipt, formerly the chief distinction between receipt and possession offenses. MODEL PENAL CODE § 223.6. Under New York Penal Law, a person is guilty of criminal possession of stolen property when he "knowingly possesses" any of six categories of stolen property "with the intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof." New York Penal Law does not separately penalize receipt crimes, instead proscribing all knowing possession of stolen property under N.Y. Penal Law §§ 165.40, 165.45, and 165.50. Thus, criminal possession of stolen property under New York law consists of essen-

---

1. Black's Law Dictionary indicates that "many modern penal codes have consolidated ... property offenses under the name theft." BLACK'S LAW DICTIONARY 1487 (7th ed.1999). The Model Penal Code sets forth a "consolidation of theft offenses" subsuming eight offenses including receipt (defined as "acquiring possession, control or title") of stolen property and unauthorized use of automobiles. MODEL PENAL CODE §§ 223.2–223.9.

tially the same elements as receipt of stolen property (as that offense has been defined by the majority of states) and is, therefore, properly categorized as an enumerated offense under 8 U.S.C. § 1101(a)(43)(G).

Nor can petitioner prevail on his argument that the New York statute is divisible because it applies to temporary deprivations of property which do not themselves constitute theft offenses. The Court of Appeals for the Second Circuit has "long endorsed categorical analyses of criminal statutes" in the context of determining whether a particular crime constitutes a deportable offense. *Dalton*, 257 F.3d at 204–205. Where a criminal statute is divisible, *i.e.*, it contains both crimes that fit the statutory definition of a deportable offense and those that do not, a petitioner will not be deemed to have committed a deportable offense unless his record of conviction clearly indicates that he was convicted of a particular subcategory of the statute proscribing a deportable offense. *Hernandez–Mancilla*, 246 F.3d at 1009; *Sui*, 250 F.3d at 119.

The BIA has interpreted a theft offense to be any "taking of property . . . whenever there is a criminal intent to deprive the owner of the rights and benefits of ownership, even if such deprivation is less than total or permanent." *In re V–Z–S*, 22 I. & N. Dec. 1338, 1346 (BIA Aug. 1, 2000). This interpretation has been adopted as a reasonable construction of the statute by the Courts of Appeals of the Seventh and Ninth Circuits. *See Huerta–Guevara v. Ashcroft*, 321 F.3d 883, 887 (9th Cir.2003); *Hernandez–Mancilla*, 246 F.3d at 1009. I agree with the conclusion of those Courts of Appeals. Neither the Model Penal Code nor the majority of states require permanent deprivation as an element of a theft offense. Indeed, only five states impose such a requirement. *See* MODEL PENAL CODE *Official Draft and Revised*

*Comments* §§ 223.2–223.3(6) n. 37. Since I conclude that both permanent and temporary deprivations of property may constitute theft offenses under 8 U.S.C. § 1101(a)(43)(G), I conclude that N.Y. Penal Law § 165.45 is not a divisible statute on the ground asserted by petitioner.

### Conclusion

For the reasons discussed above, petitioner's application for a writ of habeas corpus is denied. The March 17, 2000 stay of removal pending the resolution of this petition is lifted.

As petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability is denied.

**SO ORDERED.**