**Damaine Antonio JOBSON, Petitioner,**

v.

**John ASHCROFT, Attorney General of the United States, Respondent.**

**Docket No. 02–4019.**

United States Court of Appeals, Second Circuit.

Argued: Sept. 24, 2002.

Decided: April 22, 2003.

Matthew L. Guadagno (Alan Michael Strauss, Kerry William Bretz and Jules E. Coven, on the brief), Bretz & Coven, LLP, New York, NY, for Petitioner.

Megan L. Brackney, Assistant United States Attorney for the Southern District of New York (James B. Comey, United States Attorney for the Southern District of New York; Kathy S. Marks and Gideon A. Schor, of counsel), for Respondent.

Deirdre D. Von Dornum (Paul A. Engelmayer, on the brief), Wilmer, Cutler & Pickering, New York, NY; Jonathan E. Gradess; Manuel D. Vargas; for Amicus Curiae New York State Defenders Association, in support of Petitioner.

Before: FEINBERG, SACK and MURTHA,* Circuit Judges.

FEINBERG, Circuit Judge.

Damaine Antonio Jobson petitions for review of a decision by the Board of Immigration Appeals (BIA) dismissing his appeal from a removal order issued by an immigration judge (IJ). The IJ and the BIA found Jobson deportable under the Immigration and Nationality Act (INA) as an alien convicted of an aggravated felony. Specifically, they found that Jobson's offense of conviction, manslaughter in the second degree under New York Penal Law (N.Y.P.L.) § 125.15(1), is a crime of violence as defined in 18 U.S.C. § 16(b) (section 16(b)), and therefore, an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). On appeal, Jobson argues that second-degree manslaughter under the New York statute does not constitute a crime of violence within the meaning of section 16(b). For reasons stated below, we grant the petition for review and vacate the order of removal.

## I. Background

### A. Factual Background

Jobson immigrated to the United States from Jamaica as a lawful permanent resident in 1988 when he was eight years old. He has one criminal conviction, which is the basis of the present removal order designation.

* The Honorable J. Garvan Murtha, of the United States District Court of Vermont, sitting by

against him. In September 1999, Jobson, then 19 years old, pled guilty to manslaughter in the second degree pursuant to N.Y.P.L. § 125.15(1) for recklessly causing the death of his infant son. Pursuant to a plea agreement, Jobson was sentenced to two to six years in prison. In November 1999, the INS instituted removal proceedings, charging that Jobson was deportable as an alien who was convicted of a crime of violence and thus an aggravated felony.

### B. Statutory Background

Under 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." An aggravated felony is a term of art defined in various subsections of 8 U.S.C. § 1101(a)(43); subsection (F) thereof defines aggravated felony as "a crime of violence (as defined in section 16 of Title 18 ...) for which the term of imprisonment [is] at least one year." Crime of violence, also a term of art, is defined in 18 U.S.C. § 16, as

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[1]

The predicate criminal statute, N.Y.P.L. § 125.15(1), to which Jobson pled guilty, provides that

> [a] person is guilty of manslaughter in the second degree when: (1) He recklessly causes the death of another person.

### C. Immigration Proceedings

At his removal hearings before the IJ, Jobson argued that second-degree manslaughter under New York law is not a crime of violence.[2] He also requested discretionary relief from removal. To establish that Jobson had been convicted of a crime of violence, the INS offered as evidence, among other documents, the New York City Department of Probation Presentence Report (PSR). The PSR provided two divergent views of the factual circumstances of Jobson's conviction. However, the documents the INS submitted to the IJ do not indicate the facts, if any, that Jobson admitted in pleading guilty.

In July 2000, the IJ ruled that second-degree manslaughter under New York law is an aggravated felony under 8 U.S.C. § 1101(a)(43)(F) because the offense meets the definition of crime of violence in section 16(b). The IJ relied on the PSR for the factual circumstances of Jobson's conviction.[3] The IJ stated that "the Court does not believe that [Jobson] intentionally caused the death of the child, [or] would have wanted the child to be injured in any way." However, the IJ held that section

---

1. The BIA determined that Jobson was convicted of a crime of violence within the meaning of section 16(b). On appeal, the parties agree that Jobson's conviction does not satisfy section 16(a).

2. Jobson pointed out that his offense is a nonviolent felony under New York law, a fact reflected on the "Sentence and Commitment" record.

3. We need not reach one of Jobson's claims on appeal, that the IJ erred in looking to the PSR. As the government points out, the BIA made a categorical determination based only on the generic elements of the predicate statute and thus cured any error made by the IJ in relying on the PSR.

16(b) "encompasses behavior that would be defined as negligent or reckless, including the behavior of the respondent here." The IJ concluded that Jobson's aggravated felony rendered him ineligible for discretionary relief and ordered him removed from the United States under 8 U.S.C. § 1227(a)(2)(A)(iii).

Jobson appealed the order of removal to the BIA. In December 2001, a divided BIA dismissed Jobson's appeal. Over a vigorous dissent, the majority concluded that manslaughter in the second degree under N.Y.P.L. § 125.15(1) is a crime of violence under section 16(b) because "[t]he very nature of this crime, in which the death of a person results from the reckless act of the offender, is such that there is a substantial risk that force may be used in the course of committing the offense." Accordingly, the BIA found Jobson removable as an aggravated felon.

This petition for review followed.

## II. Discussion

### A. Jurisdiction and Standard of Review

■ We address first the basis of our jurisdiction. Under 8 U.S.C. § 1252(a)(2)(C), federal courts are without jurisdiction to review final orders of removal against an alien "who is removable by reason of having committed" an aggravated felony. However, it is well established that this Court "retains jurisdiction to review the underlying jurisdictional fact at issue," namely whether Jobson has been convicted of an aggravated felony, in determining whether the jurisdictional bar applies. *Sui v. INS*, 250 F.3d 105, 110 (2d Cir.2001) (citing *Bell v. Reno*, 218 F.3d 86, 89–90 (2d Cir.2000)); see also *Dalton v. Ashcroft*, 257 F.3d 200, 203 (2d Cir.2001). Thus, the jurisdictional inquiry merges with the question on the merits in this case. If we conclude that Jobson was convicted of an aggravated felony, then we

must dismiss his petition for lack of jurisdiction; whereas if we conclude that he was not convicted of an aggravated felony, we may exercise jurisdiction and vacate the removal order. See *Sui*, 250 F.3d at 110.

With regard to the standard of review, we have held that while we defer to the BIA's interpretation of the immigration laws, see *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), we review de novo the BIA's interpretation of criminal statutes over which it has no special expertise. See *Sutherland v. Reno*, 228 F.3d 171, 174 (2d Cir.2000); see also *Mugalli v. Ashcroft*, 258 F.3d 52, 56 (2d Cir.2001).

■ The crucial issue before us—whether Jobson's conviction is an aggravated felony—turns entirely on interpretations of federal and state criminal statutes. As already indicated, the relevant portion of the definition of aggravated felony in the INA, subsection (F) of 8 U.S.C. § 1101(a)(43), incorporates by reference the definition of crime of violence found in 18 U.S.C. § 16, a federal criminal statute. Accordingly, we review de novo whether Jobson's state conviction for manslaughter in the second degree under N.Y.P.L. § 125.15(1) is a crime of violence under section 16(b) as the BIA found. See *Dalton*, 257 F.3d at 203–04.

### B. Categorical Determination of Crime of Violence

■ This Court takes a "categorical approach" to determining whether an offense is a crime of violence within the meaning of section 16(b). See *Dalton*, 257 F.3d at 204. Under a categorical approach, we look to the generic elements of the statutory offense. See *id.* ("[O]nly the *minimum* criminal conduct necessary to sus-

tain a conviction under a given statute is relevant.") (quoting *Michel v. INS*, 206 F.3d 253, 270 (2d Cir.2000) (Calabresi, J., dissenting) (emphasis added)). We have acknowledged the "daunting" difficulties of looking beyond the record of conviction and have concluded that we "cannot go behind the offense as it was charged to reach our own determination as to whether the underlying facts amount to one of the enumerated crimes." *Sui*, 250 F.3d at 117–18 (citation omitted).

The categorical approach is not only "consistent with both precedent and sound policy," *id.* at 116, it is also necessary in view of the language of the applicable statutes. Section 16(b) itself defines a crime of violence "by its nature." In *Dalton*, we held that this language specifically "compels" a reviewing court to focus "on the intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation." *Dalton*, 257 F.3d at 204. In *Sui*, we similarly concluded that the underlying facts of petitioner's offense, as distinct from the elements of the crime, could not be examined to determine whether the offense was an aggravated felony. See *Sui*, 250 F.3d at 117–18. We reasoned that under 8 U.S.C. § 1227(a)(2)(A)(iii), "deportability is premised on the existence of a conviction," not on an inquiry into a particular defendant's conduct. *Id.* at 116 n. 10, 116–17 (citation and internal quotation marks omitted).

## C. Application of the Categorical Approach

■ Under the categorical approach, the question before us is whether the minimum criminal conduct required to violate N.Y.P.L. § 125.15(1) is "by its nature" a crime of violence under section 16(b). To be a "crime of violence" under section 16(b), the predicate offense must be a felony and must "involve[ ] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." See *Sutherland*, 228 F.3d at 175 (finding that "*any and all* convictions" under the predicate statute at issue there (indecent nonconsensual touching of a person over the age of 14) "would, by their nature, necessarily involve a substantial risk that physical force may be used") (emphasis added)).

N.Y.P.L. § 125.15(1), a felony offense, provides that a person is guilty of second-degree manslaughter when "[h]e recklessly causes the death of another person." According to N.Y.P.L § 15.05(3), "[a] person acts recklessly with respect to a result or to a circumstance ... when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists." [4]

■ We believe that the essential differences between the minimum criminal conduct that violates N.Y.P.L. § 125.15(1) and the requirements of section 16(b) make clear that the BIA erred in characterizing second-degree manslaughter under New York law as a crime of violence under section 16(b).

First, we have held, in accord with a number of other courts, that the risk that a defendant will use physical force in the

---

4. N.Y.P.L. § 15.05(3) in its entirety provides that

A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.

commission of an offense is materially different from the risk that an offense will result in physical injury. See *Dalton*, 257 F.3d at 207–08; *United States v. Chapa–Garza*, 243 F.3d 921, 925–27 (5th Cir.2001); *Bazan–Reyes v. INS*, 256 F.3d 600, 609–10 (7th Cir.2001); *United States v. Parson*, 955 F.2d 858, 864–66 (3d Cir.1992). The risk of serious physical injury concerns the likely effect of the defendant's conduct, but the risk in section 16(b) concerns the defendant's likely use of violent force as a means to an end.[5] See *Bazan–Reyes*, 256 F.3d at 610 ("[T]he term 'physical force' in U.S.C. § 16(b) refers to actual violent force.").

 It is clear that the minimum criminal conduct required to violate N.Y.P.L. § 125.15(1) does not necessarily present "a substantial risk that physical force against the person ... of another may be used." The scope of N.Y.P.L. § 125.15(1) is broad; passive conduct or omissions alone are sufficient for conviction. See, e.g., *People v. Stubbs*, 122 A.D.2d 91, 504 N.Y.S.2d 235 (2d Dep't 1986) (failure to feed child); *People v. Salley*, 153 A.D.2d 704, 544 N.Y.S.2d 680 (2d Dep't 1989) (failure to intercede or provide medical care to a child beaten by someone else). The offense encompasses many situations in which the defendant applies no physical force to the victim, and more importantly, situations that do not involve any risk that the defendant will apply force to the victim. See, e.g., *People v. Hart*, 266 A.D.2d 698, 698 N.Y.S.2d 357 (3d Dep't 1999) (placing child, without a helmet, in a seat in an all terrain vehicle and driving intoxicated). In *Dalton*, we noted that "[t]here are many crimes that involve

a substantial risk of injury but do not involve the use of force," and cited as examples crimes of "gross negligence or reckless endangerment, such as leaving an infant alone near a pool." 257 F.3d at 207. Accordingly, this alone would justify holding that N.Y.P.L. § 125.15(1) is not categorically a crime of violence within the meaning of section 16(b).

Second, we believe an unintentional accident caused by recklessness cannot properly be said to involve a substantial risk that a defendant will use physical force. See *Dalton*, 257 F.3d at 206–08. We have held that the verb "use" in section 16(b), particularly when modified by the phrase "in the course of committing the offense," suggests that section 16(b) "contemplates only *intentional* conduct and 'refers only to those offenses in which there is a substantial likelihood that the perpetrator will *intentionally* employ physical force.'" *Id.* at 208 (quoting *Chapa–Garza*, 243 F.3d at 926 (emphasis added)). See also *id.* at 206 (citing *United States v. Rutherford*, 54 F.3d 370, 372–73 (7th Cir.1995)); *Bazan–Reyes*, 256 F.3d at 610–11. Thus, burglary is a crime of violence even though no force is used in a particular instance, because "a burglar of a dwelling *risks having to use force* if the occupants are home and hear the burglar." *Parson*, 955 F.2d at 866 (emphasis added); see also *Sutherland*, 228 F.3d at 176 (perpetrator "necessarily" risks having to use force in committing indecent nonconsensual touching of a person over the age of 14).

The only generic elements in the offense defined in N.Y.P.L. § 125.15(1) are (1) the defendant's state of mind when committing the offense, recklessness, and (2) the effect

---

**5.** In contrast, the Sentencing Guidelines defines "crime of violence" under the career offender provision to include any crime involving "conduct that presents a serious potential *risk of physical injury* to another." U.S.S.G. § 4B1.2(a)(2) (2002). As we recognized in *Dalton*, this definition was intended to be broader than the Guidelines prior reference to section 16(b). 257 F.3d at 207.

of the recklessness, death. Neither of these elements requires the defendant to risk using force intentionally in committing the offense. Rather, the offense requires only recklessness—conscious disregard—with respect to a substantial risk of death, but not with respect to a substantial risk of use of force.

■ Thus, in at least two respects, section 16(b) requires something different from what N.Y.P.L. § 125.15(1) requires: (1) section 16(b) requires that an offense inherently poses a substantial risk that a defendant will use physical force; and (2) section 16(b) contemplates risk of an *intentional* use of force. Neither is an element of the crime defined by N.Y.P.L. § 125.15(1). Furthermore, we believe that a predicate offense cannot satisfy the above requirements of section 16(b) without requiring some intentional conduct. See *Dalton*, 257 F.3d at 208. On this view, a defendant must, in pursuing his intended criminal activity, risk having to intentionally use force to commit the offense. By contrast, a defendant who is convicted of second-degree manslaughter, like other offenses of *pure* recklessness, may lack any "intent, desire or willingness to use force or cause harm at all." *Parson*, 955 F.2d at 866 (suggesting, in dicta, that section 16(b) requires a willingness to risk having to commit a crime of specific intent).

The government argues against this conclusion in a number of ways. First, the government points to the phrase "may be used" in section 16(b) to argue that an offense can be a crime of violence without requiring an actual, or a substantial risk of, use of force in every conviction. We agree that an offense need not require an actual use of force to come within section 16(b)'s reach. But it is not true that an offense can be a crime of violence under section 16(b) without presenting a substantial risk of the intentional use of force. As already indicated, the reason that burglary and indecent touching are crimes of violence is that they both present substantially that risk. Here, as the government apparently concedes, any and all convictions under N.Y.P.L. § 125.15(1)—an offense that requires only recklessness as to death but not any intent—do not necessarily involve such a risk. Under the categorical approach, we must reject the government's argument that an offense satisfies section 16(b) as long as *many* (but not all) convictions involve a substantial risk of the use of force.[6]

■ Next, the government attempts to distinguish *Dalton* on the basis that it involved only a negligent offense, not a reckless offense. Citing Ninth Circuit cases, the government argues that because section 16(b) requires only a "substantial risk" of the use of force, recklessness is a sufficient mens rea for a crime of violence under section 16(b). See, e.g., *United States v. Trinidad–Aquino*, 259 F.3d 1140, 1146 (9th Cir.2001).[7] Even apart from our conclusion that a crime of violence under section 16(b) must require some criminal intent, this argument fails because the government here is confusing the type of risk involved in *Dalton* and the type of risk required to fall within section 16(b). In *Dalton*, the defendant was convicted of

---

**6.** Even apart from the requirements of the categorical approach, we note that reviewing courts and the BIA are institutionally incapable of determining the empirical probability that physical force may be used in the course of committing any particular offense.

**7.** But cf. *United States v. Hernandez–Castellanos*, 287 F.3d 876, 881 (9th Cir.2002) (crime of violence under section 16(b) "must require recklessness as to, or conscious disregard of, a risk that physical force will be used against another, not merely the risk that another might be injured").

driving while intoxicated under New York law. We explained that the risk inherent in that offense

> is, notoriously, the risk of an ensuing accident; it is not the risk that the driver will "use physical force" in the course of driving the vehicle.

*Dalton,* 257 F.3d at 206. In contrast, we explained that the risk involved in a section 16(b) offense is the risk of an application of force. *Id.* at 207. Under our analysis of section 16(b), as just indicated above, a defendant must be reckless not just about potential injury, but also about having to *intentionally* use force during the commission of a crime. See *Chapa–Garza,* 243 F.3d at 927 (Section 16(b) "requires recklessness as regards the substantial likelihood that the offender will intentionally employ force ... in order to effectuate the commission of the offense."); see also *Bazan–Reyes,* 256 F.3d at 611–12.

Finally, the government urges us to accept the BIA's conclusion that manslaughter in the second degree under New York law is a crime of violence under section 16(b) solely on the basis that death results. It cites in support Eighth and Ninth Circuit cases holding that involuntary manslaughter is a crime of violence under section 16(b) or an identical statute. See, e.g., *Park v. INS,* 252 F.3d 1018, 1022 (9th Cir.2001) (California involuntary manslaughter); *United States v. Moore,* 38 F.3d 977, 979 (8th Cir.1994) (federal involuntary manslaughter); see also *Omar v. INS,* 298 F.3d 710, 717 (8th Cir.2002) (Minnesota criminal vehicular homicide). It is true that second-degree manslaughter, unlike drunk driving, always results in death. However, *Dalton* and the cases in

other circuits that hold the same view teach that simply relying on the fact of the resulting harm conflates the risk of use of force with risk of physical injury, which is not consistent with the language of section 16(b). See, e.g., *Bazan–Reyes,* 256 F.3d at 610–12 (holding that homicide by intoxicated use of motor vehicle, as well as other drunk driving offenses, is not a crime of violence under section 16(b)); see also *Chapa–Garza,* 243 F.3d at 926–27; *Parson,* 955 F.2d at 866. We recognize that second-degree manslaughter is a serious offense, but the term crime of violence under section 16(b) does not encompass all serious offenses. The cases on which the BIA relied and the cases that the government cites as authority that "uniformly demonstrates" that second degree manslaughter under New York law is a crime of violence are inapposite or unpersuasive in light of our interpretation of section 16(b).

For example, the BIA relied on our decision in *United States v. Aponte,* 235 F.3d 802 (2d Cir.2000) (per curiam). But in that case we addressed whether second-degree manslaughter under N.Y.P.L. § 125.15(1) was a crime of violence under the broader definition of § 4B1.2 of the Sentencing Guidelines, not under the narrower definition of section 16(b).[8] Moreover, the decisions of other courts, including those already referred to holding that involuntary manslaughter is a crime of violence, do not comport with our analysis of section 16(b).

▉ We think our reading of section 16(b), as referring only to those offenses that necessarily involve a substantial risk

---

**8.** See supra note 5. The government also cites the decisions of two federal district courts that considered the question. The first, *Johnson v. Vomacka,* 2000 WL 1349251 (S.D.N.Y. 2000), was adequately distinguished by the thoughtful opinion of the dissenting member

of the BIA, on the ground that the court did not address "whether the language of the New York statute involves the use of physical force under [section 16]." The second, *Gibson v. Ashcroft,* 2002 WL 461579 (S.D.N.Y. 2002), is distinguishable on the same ground.

that a defendant will intentionally use physical force during the commission of the offense, reflects the statute's plain language. However, to the extent that section 16(b) is ambiguous, the "narrowest of several possible meanings" of section 16(b) is warranted in the context of deportation proceedings. *Dalton,* 257 F.3d at 208 (quoting *Fong Haw Tan v. Phelan,* 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948)); see also *Omar v. INS,* 298 F.3d at 723 (Heaney, J., dissenting). It bears noting in this regard that lawful permanent residents who are convicted of crimes determined to be aggravated felonies are categorically ineligible for discretionary relief from deportation, regardless of equitable factors in individual cases. See *INS v. St. Cyr,* 533 U.S. 289, 296–97, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

In sum, we have considered all the arguments advanced by the government in this case and agree with Jobson that the BIA erred in holding that he is deportable as an alien convicted of an aggravated felony. For all the reasons set forth above, we conclude that Jobson's conviction under N.Y.P.L. § 125.15(1) is not a crime of violence within the meaning of section 16(b), and it is therefore not an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). Accordingly, we exercise jurisdiction over Jobson's petition for review and vacate the order of removal.