Roger G. GOUSSE, Petitioner,

v.

John ASHCROFT, Attorney General, Respondent.

Docket No. 02–4192.

United States Court of Appeals, Second Circuit.

Argued: April 14, 2003.

Decided: Aug. 6, 2003.

Michael Boyle, North Haven, CT (Michael C. Holley, Nashville, TN, of counsel), for Petitioner.

Megan L. Brackney, Assistant United States Attorney, for James B. Comey, United States Attorney for the Southern District of New York (Kathy S. Marks, Beth E. Goldman, Assistant United States Attorneys, of counsel), New York, NY, for Respondent.

Before: KEARSE, JACOBS, and CABRANES, Circuit Judges.

JACOBS, Circuit Judge.

Roger G. Gousse petitions for review of a decision by the Board of Immigration Appeals ("BIA") ordering Gousse removed to Haiti on the ground that his Connecticut *Alford* plea to the offense classified as "sale of hallucinogen/narcotic" under Conn. Gen.Stat. § 21a–277(a) amounted to a conviction for "illicit trafficking in a controlled substance" under 8 U.S.C. § 1101(a)(43)(B). Gousse argues that the record does not identify which "hallucinogen/narcotic" he sold and that Conn. Gen. Stat. § 21a–277(a) may have proscribed certain substances that were not "controlled substances" under federal law. The immigration judge ("IJ") terminated the removal proceedings on that ground, but the BIA reversed, and ordered Gousse removed, on the ground that the specific drug underlying Gousse's Connecticut conviction was heroin (which is of course a "controlled substance" under federal law).

We conclude that Gousse's conviction under Conn. Gen.Stat. § 21a–277(a) necessarily constituted a conviction for "illicit trafficking in a controlled substance" un-der 8 U.S.C. § 1101(a)(43)(B), which is a removable "aggravated felony" under the Immigration and Nationality Act ("INA"). We therefore dismiss the petition for lack of jurisdiction.

## BACKGROUND

### A. Factual Background

Gousse immigrated from Haiti as a lawful permanent resident in 1978 at age 14. On October 9, 1997, in the Superior Court of the State of Connecticut in Norwalk, Gousse pled guilty pursuant to a plea agreement to one count of violating Conn. Gen.Stat. § 21a–277(a). The record is cursory in important respects because the plea agreement allowed Gousse to enter an *Alford* plea. *See North Carolina v. Alford,* 400 U.S. 25, 37, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").

At the plea hearing on October 9, 1997, the prosecutor outlined the drug transaction:

The State will indicate the following. On April the 17th of 1997[a] member of the Special Services conducted an undercover narcotics operation in Roodner Court. The defendant was in there, he was observed with another individual transacting narcotics. The undercover went up to this other individual. Told him that he needed a bag, which is a street term for heroin. This individual then went to another individual who is known as the Cisco Kid. Cisco Kid was later determined to be this defendant here who was identified by the police officers. So it went from Mims to Cisco Kid to the undercover.

Consistent with *Alford,* the plea was accepted even though Gousse denied the facts stated by the prosecutor. Sentencing was set for November 4, 1997, but Gousse failed to appear. Gousse ultimately materialized in court (and was additionally charged for the failure to appear) on May 11, 1998, at which point a public defender was appointed. Gousse was sentenced for both crimes on August 13, 1998, and received three to six years' imprisonment for the section 21a–277(a) conviction. The record of conviction lists the specific violation of section 21a–277(a) as "sale of hallucinogen/narcotic." [1] The conviction was entered on August 13, 1998.

## B. Statutory Background

The INA provides that "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" is defined to include "illicit trafficking in a controlled substance (as defined in [21 U.S.C. § 802]), including a drug trafficking crime." *Id.* § 1101(a)(43)(B). The Controlled Substances Act ("CSA"), 21 U.S.C. § 802, defines "controlled substance" as "a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of Part B of this subchapter." *Id.* § 802(6). The term "aggravated felony" applies to the offenses defined as such under federal law, even if the actual conviction is for a violation of state law. *See* 8 U.S.C. § 1101(a)(43).

Section 21a–277(a), the statute under which Gousse was convicted, provides:

> Any person who manufactures, distributes, *sells,* prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person *any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter,* for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned . . . .

Conn. Gen.Stat. § 21a–277(a) (emphases added).

## C. Immigration Proceedings

At his removal hearing before the IJ, Gousse conceded that he had been convicted of selling narcotics in violation of section 21a–277(a), but denied that heroin was the narcotic sold to the undercover officer. When the IJ expressed doubt that the prosecutor's statement at Gousse's plea proceeding was a sufficient basis for finding that the substance was heroin, the INS moved for an opportunity to present a police report that would allegedly impeach Gousse's sworn denial that the substance was heroin. The IJ denied the motion, and terminated the proceedings on the ground that the INS failed to meet its burden of showing removability by clear and convincing evidence.[2]

---

**1.** The record of Gousse's narcotics conviction is a Superior Court document dated August 13, 1998, which combines the criminal information filed when Gousse was charged for the failure to appear, with a sentencing form. Apparently no separate judgment of conviction was entered in the Connecticut courts, but for immigration purposes, a judgment is unnecessary (though preferred) to establish the fact of conviction. *See* 8 C.F.R.

§ 1003.41(d) ("Any ... evidence that reasonably indicates the existence of a criminal conviction may be admissible as evidence thereof."); *Kuhali v. Reno,* 266 F.3d 93, 106 (2d Cir.2001). In any event, Gousse does not challenge the fact of his conviction.

**2.** The IJ also referred to earlier "repeated findings" she had made that section 21a–277(a) is broader than the CSA because Con-

The INS appealed the IJ's decision to the BIA, arguing that: (1) Gousse's state conviction necessarily constituted "illicit trafficking in a controlled substance" under the INA because the Connecticut definition of "narcotic substance" is no broader than the federal definition of "controlled substance" in the CSA; and (2) the evidence presented to the IJ indicated that the narcotic substance in question was in fact heroin (which is a "controlled substance" under the CSA). On January 11, 2002, the BIA reversed the IJ, evidently accepting the argument that a conviction under section 21a–277(a) necessarily establishes a conviction for "illicit trafficking in a controlled substance," and is thus an "aggravated felony."

On May 2, 2002, the BIA granted a motion for reconsideration, vacated its decision, but again sustained the INS's appeal, this time on the ground that the INS had established that the substance underlying Gousse's conviction was in fact heroin, and ordered Gousse removed to Haiti.

This petition for review followed.

## DISCUSSION

### I

■ Under the INA, this Court lacks jurisdiction to review Gousse's removal order if he is removable by reason of having committed a criminal offense that constitutes an "aggravated felony." *See* 8 U.S.C. §§ 1252(a)(2)(C), 1227(a)(2)(A)(iii); *Jobson v. Ashcroft*, 326 F.3d 367, 371 (2d Cir.2003). "However, this court retains jurisdiction to review the underlying jurisdictional fact at issue—namely, whether [Gousse] has been convicted of an aggravated felony." *Ming Lam Sui v. INS*, 250 F.3d 105, 110 (2d Cir.2001). Therefore, if we determine that Gousse's conviction constitutes an aggravated felony, our jurisdiction immediately vanishes and the petition for review must be dismissed for lack of jurisdiction. *See Jobson*, 326 F.3d at 371. The conclusion that the conviction is an aggravated felony may rest on a ground other than the ground cited by the BIA. *See Lukowski v. INS*, 279 F.3d 644, 646 (8th Cir.2002) ("[T]here is jurisdiction to review a removal order to determine whether the alien has in fact been convicted of a criminal offense or offenses specified in [8 U.S.C.] § 1252(a)(2)(C)."); *Yang v. INS*, 109 F.3d 1185, 1192 (7th Cir.1997).

■ Our review of the BIA's interpretation of the federal and state criminal statutes is *de novo, Jobson*, 326 F.3d at 371; *Dalton v. Ashcroft*, 257 F.3d 200, 203–04 (2d Cir.2001), and we decide this appeal on the ground that Gousse's section 21a–277(a) conviction for the "sale of hallucinogen/narcotic" is necessarily a conviction for "illegal trafficking in a controlled substance" under 8 U.S.C. § 1101(a)(43)(B).

### II

Ordinarily, the record of conviction in a drug case supplies ample evidence of the act committed (e.g., "selling" or "possessing") and of the substance involved. When, as here, an *Alford* plea is entered and the defendant denies the facts recited by the prosecutor, it becomes more complicated to ascertain whether the conviction constitutes an aggravated felony.·

■ The problem is obviated here by our application of the "categorical approach," an analysis that asks whether the statutory definition of the offense of conviction is any broader than an offense de-

necticut law proscribes substances not found in the CSA. The IJ's findings on this issue are not available in the present record, and in any event, we disagree with the IJ's conclusion for the reasons discussed *infra*.

fined as an "aggravated felony" under federal law. *See Jobson*, 326 F.3d at 371–72 (applying categorical approach to determining whether offense is removable "crime of violence" under 18 U.S.C. § 16); *Dalton*, 257 F.3d at 204 (same); *Ming Lam Sui*, 250 F.3d at 109, 116–18 (applying categorical approach to whether offense is a removable offense that "involves fraud or deceit in which the loss to ... victims exceeds $10,000" under 8 U.S.C. § 1101(a)(43)(M)(i)); *Michel v. INS*, 206 F.3d 253, 263 (2d Cir.2000) (applying categorical approach to whether offense is crime involving "moral turpitude" under 8 U.S.C. § 1227(a)(2)(A)(ii). Unless the offense of conviction is broader, the petitioner has committed an "aggravated felony" irrespective of the particular circumstances of his crime. *See, e.g., Ming Lam Sui*, 250 F.3d at 116.

■■■ The question presented is whether Gousse's conviction for violating section 21a–277(a) is necessarily a conviction for "illicit trafficking in a controlled substance" under 8 U.S.C. § 1101(a)(43)(B), which is a deportable "aggravated felony." The record of conviction is sufficiently clear to establish that Gousse was convicted pursuant to section 21a–277(a) for the "*sale* of hallucinogen/narcotic." (Emphasis added). Where the record of conviction thus supplies an element of the offense, a court may find that element satisfied absent any reasonable challenge to the validity of the record. *See Kuhali v. Reno*, 266 F.3d 93, 106 (2d Cir.2001); *see also Hamdan v. INS*, 98 F.3d 183, 189 (5th Cir.1996)

("The general rule is that, absent specific evidence to the contrary in the record of conviction, the statute must be read at the minimum criminal conduct necessary to sustain a conviction under the statute." (citing *United States ex rel. Guarino v. Uhl*, 107 F.2d 399 (2d Cir.1939) (L.Hand, J.))). The act of selling is unquestionably "illicit trafficking" when the item sold is a controlled substance. *See* 8 U.S.C. § 1101(a)(43)(B) (defining "illicit trafficking in a controlled substance" to include "a drug trafficking crime" as defined in 18 U.S.C. § 924(c)); 18 U.S.C. § 924(c)(2) (defining "drug trafficking crime" to include any felony punishable under the CSA); 21 U.S.C. § 841(a)(1) (proscribing, *inter alia*, the distribution of a controlled substance); *United States v. Finley*, 245 F.3d 199, 205–06 (2d Cir.2001) (selling drugs is a distribution offense).

As to the substance, the section 21a–277(a) conviction was for the "sale of hallucinogen/narcotic," and although a "hallucinogenic substance" is distinct from a "narcotic substance" under Connecticut law, *see* Conn. Gen.Stat. § 21a–277(a), Gousse does not argue that the Connecticut definition of "hallucinogenic substance" is any broader than the federal definition of that term.[3] The question thus becomes whether the Connecticut definition of "narcotic substance" is broader than the federal definition of "controlled substance." If not, Gousse has been convicted of an "aggravated felony," is removable irrespective of the actual substance underlying his convic-

---

**3.** Connecticut's Commissioner of Consumer Protection is charged with adopting regulations to implement the state's drug trafficking statutes, and may adopt the federal regulations issued pursuant to the CSA. *See* Conn. Gen.Stat. § 21a–243(a)–(b). In support of his concession that the federal and state definitions of "hallucinogenic substance" are coextensive, Gousse cites *State v. Freitas*, 2000 WL 1918006, 2000 Conn.Super. LEXIS 3470, at *9–*11 (Dec. 21, 2000). That case details the 1995 update to the Connecticut regulations, which made the state definition of hallucinogens equivalent to the federal counterpart. Because we accept Gousse's concession, we do not consider whether Connecticut has since defined any substance as a hallucinogen not also so defined under federal law.

tion, and we must dismiss for lack of jurisdiction.

## III

Gousse argues that the Connecticut drug law was broader than federal law in three ways: (A) the catch-all wording in the Connecticut definition of "narcotic substance" is more embracing than the federal definition of "narcotic drug"; (B) Connecticut law proscribed, while federal law did not, thebaine-derived butorphanol, (C) as well as a drug called nalmefene.

### A.    The Connecticut Catch–All

The Connecticut definition of "narcotic substance," which lists cocaine, opium, opiates or their derivatives, also embraces substances "which are similar thereto in physiological effect and which show a like potential for abuse."    Conn. Gen.Stat. § 21a–240(30)(A)(i) (opium and opiates); id. § 21a–240(30)(B) (cocaine). (The full definition is set out in the margin.[4])

Gousse argues that the federal definition of "narcotic drug," 21 U.S.C. § 802(17)-(20), is narrower because (i) the federal definition of cocaine (21 U.S.C. § 802(17)(D)) has no analog to the Connecticut prohibition of cocaine derivatives similar in effect and alike in potential for abuse, and (ii) the federal definition of opiates (21 U.S.C. § 802(18)), has a catch-all that embraces only substances that are addictive.    (The text of the federal definition is set out in the margin.[5])

4.    "Narcotic substance" means any of the following, whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis: (A) Morphine-type: (i) Opium and opiate, and any salt, compound, derivative, or preparation of opium or opiate which are similar thereto in chemical structure or which are similar thereto in physiological effect and which show a like potential for abuse, which are controlled substances under this chapter unless modified; (ii) any salt, compound, isomer, derivative, or preparation thereof which is chemically equivalent or identical with any of the substances referred to in clause (i), but not including the isoquinoline alkaloids of opium; (iii) opium poppy and poppy straw; (B) cocaine-type, coca leaves and any salt, compound, derivative or preparation of coca leaves, and any salt, compound, isomer, derivatives or preparation thereof which is chemically equivalent or identical with any of these substances or which are similar thereto in physiological effect and which show a like potential for abuse, but not including decocainized coca leaves or extractions of coca leaves which do not contain cocaine or ecgonine . . . .
Conn. Gen.Stat. § 21a–240(30).

5.    (17) The term "narcotic drug" means any of the following whether produced directly or indirectly by extraction from substances of vegetable origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis:

(A) Opium, opiates, derivatives of opium and opiates, including their isomers, esters, ethers, salts, and salts of isomers, esters, and ethers, whenever the existence of such isomers, esters, ethers, and salts is possible within the specific chemical designation.    Such term does not include the isoquinoline alkaloids of opium.

(B) Poppy straw and concentrate of poppy straw.

(C) Coca leaves, except coca leaves and extracts of coca leaves from which cocaine, ecgonine, and derivatives of ecgonine or their salts have been removed.

(D) Cocaine, its salts, optical and geometric isomers, and salts of isomers.

(E) Ecgonine, its derivatives, their salts, isomers, and salts of isomers.

(F) Any compound, mixture, or preparation which contains any quantity of any of the substances referred to in subparagraphs (A) through (E).

(18) The term "opiate" means any drug or other substance having an addiction-forming or addiction-sustaining liability similar to morphine or being capable of conversion into a drug having such addiction-forming or addiction-sustaining liability.

(19) The term "opium poppy" means the plant of the species Papaver somniferum L., except the seed thereof.

We do not consider that argument because it is beside the point. Gousse is comparing (i) Connecticut's definition of "narcotic substance," to (ii) the federal definition of "narcotic drug." But the question here is whether Gousse was convicted of a state offense that is classified as an "aggravated felony" under the INA. The "aggravated felony" at issue here is "illicit trafficking in a *controlled substance*." 8 U.S.C. § 1101(a)(43)(B) (emphasis added). The federal definition of "narcotic drug" encompasses fewer than all of the substances encompassed by the federal definition of "controlled substances."

Under federal law, "[t]he term 'controlled substances' means a drug or other substance, or immediate precursor, included in schedule I, II, III, IV, or V of part B of this title [21 U.S.C. § 812]." 21 U.S.C. § 802(6). Gousse's argument, premised on the supposedly broader prohibition of Connecticut law, fails unless some substance proscribed by the Connecticut definition of "narcotic substance" is missing from the federal schedules and therefore is not a "controlled substance." Gousse contends that thebaine-derived butorphanol and nalmefene are two such substances.

## B.    Thebaine-derived Butorphanol

Gousse was arrested for the drug offense on April 17, 1997. At that time, thebaine-derived butorphanol was (Gousse argues) a "narcotic substance" under the catch-all in the Connecticut statute because it is derived from opiates (Conn.Gen. Stat. § 21a–240(30)(A)(i)); but it was explicitly excluded from the federal schedules by 21 C.F.R. § 1308.12(b)(1) (1996). Gousse thereby floats the possibility that, for all the record shows, he was arrested for selling a drug proscribed by Connecti-

cut law that was nevertheless not then on the federal controlled-substance schedules.

The Attorney General points out that butorphanol was expressly added to Connecticut's controlled-substance schedule on June 3, 1998, well after Gousse's arrest, that the addition would have been unnecessary if that drug was already proscribed by the catch-all, and that the offense of conviction therefore could not have been a sale of thebaine-derived butorphanol. This argument ignores Gousse's contention that thebaine-derived butorphanol was proscribed by the catch-all, and that the June 1998 amendment simply added all forms of butorphanol to the Connecticut schedules. We will assume *arguendo* that Gousse is correct that thebaine-derived butorphanol was illicit in Connecticut even prior to June 3, 1998, and so was illicit when he was arrested and when he pled guilty as well as when his conviction was entered on August 13, 1998. The decisive issue thus becomes the status of thebaine-derived butorphanol under controlling federal statutes.

The INA provides that: "[a]ny alien who is *convicted* of an aggravated felony *at any time after admission* is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii) (emphases added). The definition of an "aggravated felony" includes "[i]llicit trafficking in a *controlled substance*, . . . including a drug trafficking crime." *Id.* § 1101(a)(43)(B) (emphasis added). "The term ['aggravated felony'] applies to an offense described in this paragraph *whether in violation of* Federal or *State law* . . . ." *Id.* § 1101(a)(43) (emphases added). "Notwithstanding any other provision of law (including any effective date), the term ['aggravated felony'] applies regardless of

(20) The term "poppy straw" means all parts, except the seeds, of the opium poppy, after mowing.

21   U.S.C. § 802(17)-(20).

whether the conviction was entered before, on, or after September 30, 1996." *Id.*

Gousse entered his plea on October 9, 1997. The prior week, on October 1, the Drug Enforcement Agency issued a regulation placing butorphanol (in all its forms) on the federal controlled-substance schedules, effective October 31, 1997. *See* Schedules of Controlled Substances Placement of Butorphanol Into Schedule IV, 62 Fed.Reg. 51,370 (Oct. 1, 1997) (codified at 21 C.F.R. § 1308.14(f)(2)). Gousse's conviction was entered on August 13, 1998.

Assuming that the substance Gousse sold on April 17, 1997 was thebaine-derived butorphanol, the record thus establishes (in the wording of the controlling federal statutes) that Gousse was "convicted" (on August 13, 1998) [6] "in violation of ... State law" (Conn.Gen.Stat. § 21a–277(a)) of "trafficking in a controlled substance" (butorphanol having been listed on the federal schedules as of October 31, 1997) "after [his] admission" to the United States (in 1978). Therefore, even if Gousse was arrested for selling thebaine-derived butorphanol, he was nevertheless convicted of an "aggravated felony" under the INA.

Gousse contends that we must look only at the schedules of substances proscribed under federal law at the time of the offense conduct; but the statutory wording does not support that view: "Notwithstanding any other provision of law (including any effective date), the term ['aggravated felony'] applies regardless of whether the conviction was entered before, on, or after September 30, 1996." 8 U.S.C. § 1101(a)(43). In *Kuhali v. Reno*, 266 F.3d 93 (2d Cir.2001), a habeas petitioner similarly argued that his 1980 conviction could not support removal, regardless of post–1980 amendments to the INA, because federal immigration law in force in 1980 did not support removal. *Id.* at 110–11. In rejecting this contention, we concluded that the specific language used in § 1101(a)(43) makes "explicit that the new [definition of 'aggravated felony'] should apply retroactively." *Id.* at 111; *see also INS v. St. Cyr*, 533 U.S. 289, 318–19, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (citing § 1101(a)(43) as an example of "Congress' willingness ... to indicate unambiguously its intention to apply specific provisions retroactively."). All that is required for removal is that an earlier conviction be encompassed by the definition of "aggravated felony" at the time removal proceedings are initiated. *See Kuhali*, 266 F.3d at 111 ("Because the INS initiated removal proceedings against Kuhali on January 13, 1999, well after ... September 30, 1996, his 1980 conviction is clearly encompassed by the new provisions."). On February 3, 2000, the day the INS initiated removal proceedings against Gousse, thebaine-derived butorphanol was incontestably on the federal schedules; therefore, assuming Gousse was convicted for selling that substance, his conviction still qualifies as an "aggravated felony."

## C. Nalmefene

The parties agree that nalmefene is not a "controlled substance" under federal law because it is expressly excluded from the federal schedules by 21 C.F.R. § 1308.12(b)(1). If nalmefene is likewise licit in Connecticut, then Gousse's Connecticut conviction was for selling some-

---

6. In some circumstances not presented here, Connecticut will consider an offender "convicted" on the date of a guilty plea. *See, e.g., State v. Fullwood*, 194 Conn. 573, 586–87, 484 A.2d 435 (1984). However, the normal rule is that "the formal record of sentence and judgment ... is the hallmark of the ordinary criminal judgment." *Id.* at 587, 484 A.2d 435.

thing else, and the conviction necessarily was for selling a "controlled substance" as defined by federal law.

The Attorney General argues that nalmefene is licit under Connecticut law because the substance: is not covered by the statutory definition of "narcotic substance" in Conn. Gen.Stat. § 21a–240(30); is not listed on any Connecticut schedule; and is an "analogue" of naltrexone, a substance that is specifically excluded from the Connecticut schedules. Gousse contends that nalmefene is an opiate derivative (and thus defined as a "narcotic substance" under Conn. Gen.Stat. § 21a–240(30)(A)(i)), and that it is distinct from naltrexone.

■ There is support for Gousse's view that nalmefene and naltrexone are distinct substances, *see, e.g.,* Barbara J. Mason et al., *A Double-blind, Placebo–Controlled Study of Oral Nalmefene for Alcohol Dependence,* 56 Archives Gen. Psychiatry 719, 719 (1999) ("Nalmefene is a newer opioid antagonist that is structurally similar to naltrexone but with a number of potential pharmacological and clinical advantages for the treatment of alcohol dependence."), and therefore that Connecticut's tolerance of naltrexone does not mean that nalmefene is licit as well (absent any contrary conclusion by the Connecticut courts). However, there is no basis for concluding that nalmefene is within the statutory definition of "narcotic substance" in Conn. Gen.Stat. § 21a–240(30)(A)(i), which includes only such opiate derivatives as "are similar [to opium and opiates] in chemical structure or which are similar thereto in physiological effect and *which show a like potential for abuse.*" Conn. Gen.Stat. § 21a–240(30)(A)(i) (emphasis added). Gousse concedes that nalmefene is non-addictive, but argues that section 21a–

240(30)(A)(i) does not necessarily exclude all non-addictive narcotics. In any event, section 21a–240(30)(A)(i) only embraces opiate derivatives that *inter alia* have a "like potential for abuse," and no such showing has been made. The study on which Gousse chiefly relies indicates that nalmefene has no abuse potential at all. *See* Mason et al., *supra,* at 719 ("Like naltrexone, nalmefene is a pure opioid antagonist with no agonist activity and *no abuse potential.*" (emphasis added)). Moreover, the Food and Drug Administration ("FDA") has approved a label for an FDA-approved drug called Revex (the brand name of nalmefene hydrochloride) that suggests the same conclusion. *See* http://www.fda.gov/cder/foi/label/2000/20459S21bl.pdf (last visited July 24, 2003) ("Revex has not been shown to produce tolerance, physical dependence, *or abuse potential.*" (emphasis added)). Therefore, Gousse's conviction could not have arisen from selling nalmefene, because that substance was not proscribed in Connecticut.[7]

\*   \*   \*   \*   \*   \*

In sum, Gousse cannot identify a substance that was both (i) within the Connecticut definition of "narcotic substance" and (ii) outside the federal definition of "controlled substance." Applying the categorical approach of *Jobson v. Ashcroft,* 326 F.3d 367, 371–72 (2d Cir.2003), we conclude that Gousse's Connecticut conviction for the "sale of hallucinogen/narcotic" under section 21a–277(a) was necessarily a conviction for "illicit trafficking in a controlled substance," a removable "aggravated felony" under the INA.[8]

■ Finally, Gousse relies on several unpublished BIA decisions for the proposi-

---

7. There are no reported Connecticut·cases in which someone was prosecuted for a drug crime involving nalmefene.

8. The author would decide this case on the independently sufficient ground that the prosecutor's recitation of the facts supports the inference that the drug sold was heroin: a

tion that aliens convicted under Conn. Gen. Stat. § 21a–277 have not necessarily been convicted of an aggravated felony. This Court of course owes no deference to the BIA's interpretation of state and federal criminal laws. *See id.* at 371. Indeed, the BIA itself accords no precedential value to its own unreported decisions. *See* 8 C.F.R. § 1003.1(g). In any event, the cases cited are inapposite.[9]

## CONCLUSION

Gousse has been convicted of an aggravated felony under the INA; his petition for review is therefore dismissed for lack of jurisdiction.

steerer and a drug dealer on the street would not assume that a customer seeking to buy a "bag" was in the market for thebaine-derived butorphanol or nalmefene.

9. Four of the unreported cases considered whether a conviction for violating Conn. Gen. Stat. § 21a–277(b), which punishes the sale of any "controlled substance," is necessarily an aggravated felony. *See Matter of Becford–Becford,* No. A30–305–824 (BIA Jan. 12, 2001); *Matter of Blake,* No. A41–649–843 (BIA Feb. 26, 2001); *Matter of Bisono,* No. A40–539–926 (BIA May 24, 2001); *Matter of Hayles,* No. A45–617–072 (BIA Jan. 8, 2002).

In each case, the BIA reversed an IJ's ruling that a conviction was an aggravated felony because Conn. Gen.Stat. § 21a–243(f), set out below, acted as a savings provision:

In the event of any inconsistency between the contents of schedules I, II, III, IV and V of the controlled substance scheduling regulations and schedules I, II, III, IV and V of the federal Controlled Substances Act, as amended, the provisions of the federal act shall prevail, except when the provisions of the Connecticut controlled substance scheduling regulations place a controlled substance in a schedule with a higher numerical designation, schedule I being the highest designation.

Conn. Gen.Stat. § 21a–243(f).

In each case, the BIA decided that section 21a–243(f) did not operate to make the Connecticut schedules mirror the federal schedules, and noted that the Connecticut schedules have at times been broader than the federal counterpart, such as between June 27, 1989 (when anabolic steroids were listed on the Connecticut schedules) and November 29, 1990 (when they were listed on the federal schedules). (The example of steroids was also cited in a fifth unreported BIA case cited by Gousse. *See Matter of Asirvatham,* No. A40–104–383 (BIA June 15, 2001) (conviction for possession of a "controlled substance" in violation of Conn. Gen.Stat. § 21a–279(a) not necessarily an aggravated felony).) In any event, it does not matter to Gousse, in the circumstances presented by his case, if the Connecticut schedules may at times be broader than the federal schedules.

In *Matter of Cuthbert,* No. A43–044–701 (BIA Mar. 12, 2001), also cited by Gousse, the BIA held that a conviction for violating section 21a–277(a) was not necessarily an aggravated felony because the Connecticut definition of "narcotic substance" is broader than the federal definition of "narcotic drug." As explained earlier, this is not the relevant comparison.