Karamokotie KAMAGATE,
Petitioner–Appellant,

v.

John ASHCROFT, United States Attorney General; James W. Ziglar, Immigration and Naturalization Service Commissioner; Christine G. Davis, New Orleans Immigration and Naturalization Service Director; Edward McElroy, New York Immigration and Naturalization Service Director; United States Immigration and Naturalization Service, Respondents–Appellees.

Docket No. 02–2433.

United States Court of Appeals,
Second Circuit.

Argued: July 16, 2004.

Decided: Sept. 21, 2004.

Norman Trabulus, Garden City, New York, for Petitioner–Appellant.

Margaret M. Kolbe, Assistant United States Attorney (Varuni Nelson, Steven Kim, Assistant United States Attorneys, on the brief), for Roslynn R. Mauskopf, United States Attorney, Eastern District of New York, Brooklyn, New York, for Respondents–Appellees.

Before: POOLER, SACK, and RAGGI, Circuit Judges.

RAGGI, Circuit Judge.

Petitioner–Appellant Karamokotie Kamagate appeals from a judgment of the United States District Court for the Eastern District of New York (Carol Bagley Amon, *Judge*), entered on June 24, 2002, denying his petition pursuant to 28 U.S.C. § 2241 to vacate a final order of removal from the United States.[1] *See Kamagate v. Ashcroft*, No. 01–CV–4292 (CBA) (E.D.N.Y. June 24, 2002). While his appeal and a motion to stay the removal order were pending before this court, Kamagate was, in fact, removed from the United States. Because Kamagate is, nevertheless, subject to adverse collateral consequences as a result of the challenged removal order, we conclude that his appeal is not moot.

Kamagate asserts that he is entitled to § 2241 relief because the basis for his removal was an erroneous conclusion by an Immigration Judge ("IJ") and by the Board of Immigration Appeals ("BIA") that he had been convicted of an aggravated felony, *see* 8 U.S.C. § 1227(a)(2)(A)(iii),[2] specifically, "an offense relating to ... counterfeiting," *id.* § 1101(a)(43)(R).[3] In

---

1. The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, div. C, tit. III, 110 Stat. 3009–546 (1996), changed the vocabulary of immigration proceedings, recharacterizing actions for "deportation" and "exclusion" as "removal." *See Evangelista v. Ashcroft*, 359 F.3d 145, 147 n. 1 (2d Cir. 2004). In this opinion, we use the terms interchangeably.

2. Section 1227(a)(2)(A)(iii) states: "Any alien who is convicted of an aggravated felony at any time after admission is deportable."

3. Section 1101(a)(43)(R) defines "aggravated felony" to include "an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year."

challenging this conclusion on appeal, Kamagate relies on an argument never raised during the administrative proceedings or before the district court: he submits that an offense relates to counterfeiting only if it involves the creation of counterfeit instruments or a scheme to do so. He asserts that his 1998 conviction in the Eastern District of New York for conspiracy to utter and possess counterfeit securities in violation of 18 U.S.C. §§ 371, 513(a), see *United States v. Kamagate*, No. 97–CR–0033 (CBA) (E.D.N.Y. Feb. 27, 1998), cannot evidence a crime "related to counterfeiting" because a defendant can be guilty of such a conspiracy without proof that the conspirators ever dealt in counterfeit securities, much less that they made or intended to make such instruments. We conclude that this argument misconstrues 8 U.S.C. § 1101(a)(43)(R) and misunderstands the relationship of that section to § 1101(a)(43)(U).[4] We hold that Kamagate's 1998 conviction is for an aggravated felony, and we affirm the judgment of the district court.

### Background

I. *Kamagate's 1998 Conviction for Conspiring to Utter and Possess Counterfeit Securities*

Karamokotie Kamagate legally entered the United States on October 11, 1989, married a United States citizen in June 1990, and became a lawful permanent resident on September 10, 1990. In 1996, he joined others in a scheme to cash various counterfeit corporate checks and fraudulent Treasury checks, thereby causing losses of approximately $179,000. Charged in the Eastern District of New York with conspiring to utter and possess counterfeit checks, see 18 U.S.C. §§ 371, 513(a), actually uttering and possessing a counterfeit check, see *id.* § 513(a), and fraudulently endorsing a United States Treasury check, see *id.* § 510(a), Kamagate pleaded guilty to the conspiracy charge on March 20, 1997, and on February 27, 1998, the district court sentenced him to, *inter alia,* a thirteen-month term of incarceration.[5]

Having waived direct appeal in his plea agreement, Kamagate collaterally challenged his conviction pursuant to 28 U.S.C. § 2255, claiming primarily ineffective assistance of counsel. After an evidentiary hearing, the district court denied the motion on August 23, 2000, see *Kamagate v. United States,* No. 00–CV–0024 (CBA) (E.D.N.Y. Aug. 24, 2000), and this court declined to grant Kamagate a certificate of appealability, see *Kamagate v. United States,* No. 00–2598 (2d Cir. Apr. 6, 2001).

II. *Immigration Proceedings*

Meanwhile, on July 22, 1999, the Immigration and Naturalization Service ("INS") issued Kamagate a Notice to Appear for removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) on the ground that his federal conviction was for an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(R) and (U). As a result of this notice, upon Kamagate's completion of his term of incarceration, the Bureau of Prisons transferred him to INS custody. First appearing before an IJ on August 31, 1999, Kamagate was granted a continuance to allow him to secure counsel. At his next appearance on October 14, 1999, a

---

4. Section 1101(a)(43)(U) provides that "an attempt or conspiracy to commit an offense described in [Section 1101(a)(43)]" is also an aggravated felony.

5. The following year, on February 3, 1999, Kamagate was convicted in New York State court of criminal possession of a forged instrument, see N.Y. Penal Law § 170.25, and sentenced to six months' imprisonment to run concurrently with his federal sentence.

further adjournment was granted to afford Kamagate's counsel sufficient time to prepare for the removal hearing. Sometime thereafter, Kamagate fired his attorney and on January 25, 2000, advised the IJ that he elected to proceed *pro se.*

At the removal hearing, Kamagate admitted his federal conviction but did not specifically concede that he was removable on this ground. Instead, he asserted a fear of persecution and torture if returned to his native country, Cote d'Ivoire (formerly known as the Ivory Coast), and applied for withholding of removal pursuant to 8 U.S.C. § 1231(b)(3) and protection under the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("Convention Against Torture").[6] In a decision dated June 19, 2000, the IJ ruled that Kamagate had failed to establish circumstances warranting relief from removal under either United States law or the Convention Against Torture and, summarily concluding that the federal conviction was for an aggravated felony, ordered Kamagate removed from the United States. The decision was upheld by the BIA on November 29, 2000.[7]

### III. *The Pending § 2241 Petition*

On June 22, 2001, Kamagate, again proceeding *pro se,* filed his second § 2241 petition in the district court, arguing that the BIA had improperly ordered his removal based on conviction for a crime that was not, in fact, an aggravated felony.[8] He moved for a stay of removal pending disposition of his petition, which motion the district court granted.

In support of his petition, Kamagate asserted that his crime of conviction did not fall within the definition of aggravated felony provided in 8 U.S.C. § 1101(a)(43)(U) in light of our decision in *Ming Lam Sui v. INS,* 250 F.3d 105, 110 (2d Cir.2001), or the definition provided in § 1101(a)(43)(R), which he read as pertaining only to motor vehicle identification numbers. In an unpublished Memorandum and Order dated June 18, 2002, the district court rejected these arguments. It noted that *Ming Lam Sui* concluded that a conviction for one substantive crime

---

6. The Convention Against Torture, Dec. 10, 1984, 1465 U.N.T.S. 85, has been implemented in the United States by the Foreign Affairs Reform and Restructuring Act of 1998, Pub.L. No. 105–277, Div. G, Title XXII, § 2242, 112 Stat. 2681–822 (1998) (codified at 8 U.S.C. § 1231 note). *See Khouzam v. Ashcroft,* 361 F.3d 161, 168 (2d Cir.2004).

7. Approximately two months before the IJ ruling, on April 12, 2000, Kamagate first petitioned the district court for habeas corpus relief pursuant to 28 U.S.C. § 2241, challenging the INS decision to hold him without an individualized bond hearing pending a determination on his removability. On January 24, 2001, after Kamagate's order of removal became final, the district court dismissed the § 2241 petition as moot, *see Kamagate v. Reno,* No. 00–CV–2213 (CBA) (E.D.N.Y. Jan. 29, 2001), which decision this court summarily affirmed, *see Kamagate v. Reno,* 22 Fed. Appx. 73 (2d Cir.2001).

8. Kamagate also argued that amendments to the Immigration and Nationality Act ("INA") made by § 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, 1277 (Apr. 24, 1996), and IIRIRA §§ 304(b) and 348(a), which eliminate discretionary relief from removal under INA §§ 212(c) and 212(h), *see* 8 U.S.C. § 1182(c) and (h), should not be applied retroactively to him because his criminal conduct pre-dates the enactment of these laws. Further, he argued that his ineligibility as a legal permanent resident alien for § 212(h) relief violated his right to equal protection. Because Kamagate does not appeal the district court's rejection of these arguments, *see Kamagate v. Ashcroft,* No. 01–CV–4292 (CBA), at 9–15, we do not discuss them further in this opinion.

did not necessarily establish an "attempt" to commit a different crime, an issue not presented in this case where Kamagate plainly stands convicted of "conspiracy" to violate 18 U.S.C. § 513(a). *See Kamagate v. Ashcroft*, No. 01–CV–4292 (CBA), at 7–9. Relying on the plain language and grammatical structure of the statute, the district court further concluded that the term "vehicles" applied to only one clause in subsection (R), identifying offenses relating to "trafficking in vehicles the identification numbers of which have been altered" as aggravated felonies. 8 U.S.C. § 1101(a)(43)(R). It ruled that the term "vehicles" did not pertain to, much less limit, three other clauses in the statute identifying other aggravated felonies, specifically, offenses relating to " 'commercial bribery,' 'counterfeiting,' or 'forgery.' " *Kamagate v. Ashcroft*, No. 01–CV–4292 (CBA), at 6 (quoting § 1101(a)(43)(R)). Accordingly, the district court denied Kamagate's § 2241 petition and lifted its stay of removal.

On July 8, 2002, Kamagate filed a notice of appeal from the district court judgment, and soon thereafter moved for a stay of removal, which this court granted by order entered September 24, 2002. In fact, Kamagate had been deported from the United States on August 20, 2002, prompting respondents, in May 2003, to move for dismissal of this appeal as moot. Because respondents had a Cote d'Ivoire address for Kamagate, this court directed their counsel to inquire of Kamagate in writing whether he wished to pursue his appeal. When Kamagate responded affirmatively, we directed the appointment of counsel and ordered briefing on the following issues: (1) whether "conspiracy to utter and possess counterfeit securities" is an "aggravated felony" under § 1101(a)(43)(R) and (U); (2) if not, whether either this federal offense or Kamagate's New York State conviction involved a crime of moral turpitude under the INA; and (3) whether Kamagate's conviction of either offense renders him permanently inadmissible thereby rendering his appeal moot because his removal would present no adverse collateral consequences. *Kamagate v. Ashcroft*, No. 02–2433 (2d Cir. Aug. 28, 2003).

### *Discussion*

#### I. *Jurisdiction*

■ IIRIRA stripped federal courts of jurisdiction to review final removal orders against aliens based on their commission of aggravated felonies. *See* 8 U.S.C. § 1252(a)(2)(C). This jurisdictional bar, however, does not affect the availability of federal habeas review under 28 U.S.C. § 2241. *See Calcano–Martinez v. INS*, 533 U.S. 348, 351–52, 121 S.Ct. 2268, 150 L.Ed.2d 392 (2001); *INS v. St. Cyr*, 533 U.S. 289, 314, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *accord Kuhali v. Reno*, 266 F.3d 93, 99 (2d Cir.2001). Therefore, under § 2241, we retain jurisdiction to consider whether an alien challenging an order of removal has, as a matter of law, committed an "aggravated felony" as defined in the INA. *See Kuhali v. Reno*, 266 F.3d at 99 (citing *INS v. St. Cyr*, 533 U.S. at 314, 121 S.Ct. 2271, for the proposition that § 2241 jurisdiction extends at least to "important question[s] of law"); *see also id.* at 100–01 (holding the availability of § 2241 review not affected by court's ability to consider "aggravated felony" challenge on direct review to determine whether IIRIRA's jurisdictional bar applies).

#### II. *Kamagate's Appeal Is Not Moot*

Although respondents initially argued that this appeal should be dismissed as moot, the parties now assert that Kamagate's removal to Cote d'Ivoire does not moot the case. We agree.

A case becomes moot if, at any stage of the proceedings, it fails to satisfy the case-or-controversy requirement of Article III, Section 2, of the Constitution. *See Spencer v. Kemna,* 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998); *accord Marrero Pichardo v. Ashcroft,* 374 F.3d 46, 51 (2d Cir.2004); *Swaby v. Ashcroft,* 357 F.3d 156, 159–60 (2d Cir.2004). Where a petitioner challenging an order of removal has been deported from the United States, he "must show some 'collateral consequence' ... meaning 'some concrete and continuing injury other than the now-ended [threat of removal]' to establish a live case or controversy." *Swaby v. Ashcroft,* 357 F.3d at 160 (quoting *Spencer v. Kemna,* 523 U.S. at 7, 118 S.Ct. 978). We conclude that Kamagate satisfies this requirement because a collateral consequence of his removal for an aggravated felony conviction is "a lifetime bar from reentering the United States." *Id.* (citing 8 U.S.C. § 1182(a)(9)(A)(ii) [9]). Were this court to accept Kamagate's argument that his 1998 federal conviction was not for an aggravated felony offense and to grant him a writ of habeas corpus vacating his order of removal, he would thereby secure significant relief; specifically, § 1182(a)(9)(A)(ii) would no longer stand as a bar to his seeking reentry into this country. *See id.* (holding that a claim is not moot if there is "sufficient likelihood" that the collateral injury alleged can be redressed by the relief sought in the court action).

As our inquiry to the parties recognized, Kamagate may nevertheless face permanent inadmissibility if his crime of conviction involved "moral turpitude." 8 U.S.C. § 1182(a)(2)(A)(i)(I).[10] The parties seem to agree that because the conspiracy crime of conviction required proof of a fraudulent or deceitful intent, Kamagate's offense could be deemed one involving moral turpitude. *See Jordan v. De George,* 341 U.S. 223, 227, 71 S.Ct. 703, 95 L.Ed. 886 (1951) (recognizing that "fraud has ordinarily been the test to determine whether crimes not of the gravest character involve moral turpitude" (citing *United States ex rel. Berlandi v. Reimer,* 113 F.2d 429, 431 (2d Cir.1940))); *see also Winestock v. INS,* 576 F.2d 234, 235 (9th Cir.1978) (holding that knowingly selling, transferring, and delivering counterfeit United States securities intending to pass them as genuine is a crime involving moral turpitude); *In re Flores,* 17 I. & N. Dec. 225, 230 (B.I.A. 1980) (holding that uttering counterfeit documents relating to alien registration knowing them to be counterfeit is a crime involving moral turpitude).

We need not here decide whether counterfeiting crimes invariably involve moral turpitude. We note only that, were we so to rule in this case, Kamagate's appeal would still not be moot. An alien convicted of a crime of moral turpitude may seek cancellation of removal and thereby avoid permanent inadmissibility, but only if his conviction was not for an aggravated felony. *See* 8 U.S.C. § 1229b(a)(3).[11] Thus,

**9.** Section 1182(a)(9)(A)(ii) states:

Any alien [other than one who has been ordered removed pursuant to 8 U.S.C. § 1225(b)(1) or § 1229a upon arrival in the United States] who—

(I) has been ordered removed under [8 U.S.C. § 1229a] or any other provision of law, or

(II) departed the United States while an order of removal was outstanding,

and who seeks admission ... (... at any time in the case of an alien convicted of an aggravated felony) is inadmissible.

**10.** Section 1182(a)(2)(A)(i) states in relevant part that any alien convicted of "(I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime ... is inadmissible."

**11.** Section 1229b(a) states that "[t]he Attorney General may cancel removal in the case

even if convicted for a crime of moral turpitude, Kamagate can assert significant adverse collateral consequences from the fact that his removal order identifies that crime as an aggravated felony.

Because a judicial ruling in Kamagate's favor could remedy the alleged injury of a lifetime bar from reentry with no possible cancellation of removal, we conclude that the appeal is not moot.

III. *Kamagate's Federal Conviction Is for an Aggravated Felony Under 18 U.S.C. § 1101(a)(43)(R) and (U)*

A. *Standard of Review*

■ We review a district court's denial of a § 2241 petition *de novo. See Evangelista v. Ashcroft,* 359 F.3d 145, 150 (2d Cir.2004) (citing *Chrzanoski v. Ashcroft,* 327 F.3d 188, 191 (2d Cir.2003)). In so doing, we accord considerable deference to the BIA's interpretation of ambiguous provisions of the INA, including those defining various categories of aggravated felonies. *See id.; see generally Chevron U.S.A., Inc. v. Natural Resources Def. Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). But we review *de novo* whether a particular conviction qualifies as an aggravated felony within the parameters established by the INA. *See Evangelista v. Ashcroft,* 359 F.3d at 150 (noting that the judiciary, not the BIA, is charged with the responsibility for interpreting federal criminal statutes); *Kuhali*

*v. Reno,* 266 F.3d at 102 ("[W]here the Board has further determined that an offense, as defined by a particular criminal statute, falls within [the INA's aggravated felony definition], we review that determination *de novo.*"); *Ming Lam Sui v. INS,* 250 F.3d at 112–13 (same).

B. *Waiver of the Argument that § 1101(a)(43)(R) Does Not Pertain to Conspiracies to Violate 18 U.S.C. § 513(a)*

■ The law is well established that a federal appellate court will generally not consider an issue or argument not raised below. *See, e.g., Hutton Constr. Co. v. County of Rockland,* 52 F.3d 1191, 1193 (2d Cir.1995) (and cases cited therein). In the district court, Kamagate did not argue, as he now does on appeal, that a conspiracy to utter or possess counterfeit securities cannot qualify as an offense relating to counterfeiting under § 1101(a)(43)(R) because the offense does not require proof that the conspirators made or intended to make counterfeit instruments; instead, he argued that subsection (R) applied only to offenses involving motor vehicle identifications. Correctly rejecting this narrow interpretation as a patent misreading of § 1101(a)(43)(R), the district court observed that, otherwise, "Kamagate apparently concedes that the uttering and possessing of counterfeit securities is an offense 'relating to ... counterfeiting.'"

---

of an alien who is inadmissible ... if the alien—... (3) has not been convicted of any aggravated felony."

To seek such relief an alien must demonstrate that at the time he was served with a notice to appear or at the time he committed the offense that supports his removal, whichever is earliest, he had been (1) "lawfully admitted for permanent residence [in the United States] for not less than 5 years," and (2) had "resided in the United States continuously for 7 years after having been admitted

in any status." *Id.* § 1229b(a) and (d)(1); *see also In re Perez,* 22 I. & N. Dec. 689, 693–94 (B.I.A.1999). Kamagate appears to satisfy these requirements. From his October 11, 1989 initial entry into the United States until the October 30, 1996 start of the conspiracy on which he was convicted, Kamagate was continuously present in the United States for slightly longer than seven years. He was a lawful permanent resident of this country from September 10, 1990 until October 30, 1996, a period of over five years.

*Kamagate v. Ashcroft*, No. 01–CV–4292 (CBA), at 5–6.

Kamagate now asserts that the district court erred in assuming such a concession and in failing to undertake an independent analysis of the scope of counterfeiting-related offenses under § 1101(a)(43)(R), but the record indicates that he did not seek reconsideration on this issue although he understood that he could make such a motion. Under these circumstances, if Kamagate had been represented by counsel in the district court, we would likely find his argument on appeal to have been waived by default. Nevertheless, because Kamagate proceeded *pro se* in the district court and because we retain discretion to hear arguments not previously raised, *see Marrero Pichardo v. Ashcroft*, 374 F.3d at 54, we conclude that Kamagate's omission is not fatal to our review.

Ambiguities in the record make it more difficult to discern whether Kamagate raised any administrative challenge to the application of § 1101(a)(43)(R) to his case. *See Drozd v. INS*, 155 F.3d 81, 91 (2d Cir.1998) (holding that argument not raised before IJ or BIA was waived). Nevertheless, we need not pursue the issue because even if we were to resolve the administrative waiver point in Kamagate's favor, we would reject his aggravated felony challenge as without merit. *See, e.g., Brown v. Ashcroft*, 360 F.3d 346, 353 (2d Cir.2004).

### C. *The Merits of Kamagate's Aggravated Felony Challenge*

▮ In deciding whether a crime of conviction fits within the definitions of aggravated felony outlined in § 1101(a)(43), this court has adopted a categorical approach, focusing on the elements of the offense of conviction without regard to the factual circumstances of the crime. *See Ming Lam Sui v. INS*, 250 F.3d at 116–17 & n.

10; *see also Dickson v. Ashcroft*, 346 F.3d 44, 52 (2d Cir.2003) (and cases cited therein). Relying on this principle, Kamagate submits that his 1998 conviction for conspiring to utter and possess counterfeit securities cannot qualify as an aggravated felony "relating to … counterfeiting" under § 1101(a)(43)(R) because the offense does not require proof of actual counterfeiting by anyone; such a conspiracy crime can be committed even by persons in possession of genuine securities if they mistakenly believe them to be counterfeit and intend to use them to commit fraud. Without commenting on whether Kamagate's hypothetical would, in fact, support a criminal conviction, we reject his argument that a conspiracy to violate 18 U.S.C. § 513(a) is not an aggravated felony crime.

1. *If a Substantive Violation of 18 U.S.C. § 513(a) Qualifies as an Aggravated Felony Under 8 U.S.C. § 1101(a)(43)(R), a Conspiracy to Violate § 513(a) Qualifies as an Aggravated Felony Under § 1101(a)(43)(U)*

▮ The critical flaw in Kamagate's analysis is his assumption that a § 371 conspiracy conviction with a § 513(a) objective must itself fit within the aggravated felony definition of 8 U.S.C. § 1101(a)(43)(R). Respondents relied on two statutory subsections to denominate Kamagate's 1998 crime of conviction an aggravated felony: subsection (R), which identifies "an offense relating to … counterfeiting" as an aggravated felony, and subsection (U), which defines any conspiracy to commit specified offenses, including those outlined in subsection (R), as an aggravated felony. This statutory structure is significant. It means that if the substantive crime that is the objective of a charged conspiracy fits within the aggravated felony definition of subsection (R),

the conspiracy is also an aggravated felony by virtue of subsection (U) without regard to whether the elements of the conspiracy crime themselves establish a subsection (R) offense. In sum, because Kamagate cannot dispute that he was convicted of a criminal conspiracy, that conspiracy is an aggravated felony under subsection (U) as long as the substantive crime that was the conspiratorial objective, § 513(a), qualifies as an aggravated felony relating to counterfeiting under subsection (R).[12]

2. *A § 513(a) Violation for Utterance and Possession of Counterfeit Securities "Relates to" Counterfeiting Under 8 U.S.C. § 1101(a)(43)(R)*

■ In a single statute, 18 U.S.C. § 513(a), Congress punishes with equal severity those persons who make, utter, or possess counterfeit securities intending to deceive others.[13] The first element of this substantive crime requires proof that the instrument made, uttered, or possessed by the defendant, in fact, be counterfeit. *Cf.* 1 L. Sand et al., *Modern Federal Jury Instructions*, at 21–3, 21–12, 21–20 (Instructions 21–2, 21–6, 21–11) (2003) (identifying elements of 18 U.S.C. §§ 471, 472 for making, uttering, or possessing counterfeit obligations and securities of the United States; remaining elements require proof that defendant acted knowingly and with intent to deceive). Title 18 U.S.C. § 513(c)(1) defines "counterfeited" as "a document that purports to be genuine but is not, because it has been falsely made or manufactured in its entirety." In short, the utterance or possession of genuine securities under the mistaken belief that they are counterfeit, even with an intent to defraud, will not suffice to prove a § 513(a) offense. Thus, even if, as Kamagate imaginatively suggests, a § 371 conspiracy to violate § 513(a) might be committed by persons who, with intent to deceive, utter or possess genuine securities mistakenly believing them to be counterfeit, no § 513(a) conviction can be obtained without proof that the securities at issue were counterfeit. It is the elements of a

---

**12.** Kamagate's case is readily distinguishable from *Ming Lam Sui v. INS*, 250 F.3d at 118. In that case, the issue in dispute was whether the INS could order removal of a petitioner who had pleaded guilty to a substantive § 513(a) charge of possessing counterfeit securities on the theory that implicit in that crime was an uncharged "attempt," 8 U.S.C. § 1101(a)(43)(U), to commit "an offense that involves fraud or deceit in which the loss to ... victims exceeds $10,000," *id.* § 1101(a)(43)(M)(i). Apparently, the INS never relied on § 1101(a)(43)(R) to support Ming Lam Sui's removal. Focusing then only on subsections (M)(i) and (U), this court concluded that the former did not apply because there was no actual loss to victims in excess of $10,000. *Ming Lam Sui*, 250 F.3d at 119. As to the latter, the court ruled that "possession of more than $10,000 in counterfeit securities with an intent to deceive" did not "automatically constitute[] an attempt to cause a loss exceeding $10,000 through fraud or deceit." *Id.* (noting that there had been neither a jury finding nor an allocution on the ques-

tion of whether defendant's possession constituted a substantial step toward passing checks and thereby causing a loss in excess of $10,000). Thus, under "a categorical approach to determining whether convictions constitute aggravated felonies," petitioner had "not been convicted of an aggravated felony" involving attempt "as defined in subsection (U)." *Id.*

By contrast, in Kamagate's case, there is no question that his 1998 conviction was for "conspiracy," as that term is defined in subsection (U). Thus, the only issue pertinent to the validity of his removal as an aggravated felon is whether the objective of that conspiracy was an offense covered by subsection (R).

**13.** Section 513(a) states: "Whoever makes, utters or possesses a counterfeited security of a State or a political subdivision thereof or of an organization ... with intent to deceive another person, organization, or government shall be fined under this title or imprisoned for not more than ten years, or both."

§ 513(a) substantive offense, not those of a § 371 conspiracy to violate § 513(a), that are pertinent to the application of 8 U.S.C. § 1101(a)(43)(R).

We conclude that the requirement that the security at issue in a § 513(a) offense be counterfeit coupled with the element of deceitful intent suffice to make an offense under this statute one "relating to" counterfeiting under 8 U.S.C. § 1101(a)(43)(R). The phrase "relating to" is not specifically defined in the INA, although it appears in a number of its provisions. *See, e.g.,* 8 U.S.C. § 1227(a)(2)(B)(i) (defining class of deportable aliens to include those convicted of any crime "relating to a controlled substance"). In defining aggravated felonies, the phrase "relating to" is frequently used in conjunction with specific criminal statutes. *See id.* § 1101(a)(43)(D), (E), (H), (I), (J), (K)(ii), (K)(iii), (L), (M)(ii), (N), and (P). The term is also used, however, as in the case of subsection (R), to define aggravated felonies by reference to the general subject of the offense of conviction, suggesting Congress's intent to reach more broadly than any single statute. *See id.* § 1101(a)(43)(K)(i) ("an offense that . . . relates to the owning, controlling, managing, or supervising of a prostitution business"); *id.* § 1101(a)(43)(Q) ("an offense relating to a failure to appear by a defendant for service of sentence if the underlying offense is punishable by imprisonment for a term of 5 years or more"); *id.* § 1101(a)(43)(S) ("an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year"); and *id.* § 1101(a)(43)(T) ("an offense relating to a failure to appear before a court pursuant to a court order to answer or dispose of a charge of a felony for which a sentence of 2 years' imprisonment or more may be imposed").

Although Kamagate urges us to construe "relating to" narrowly to apply in the case of subsection (R) only to convictions for the actual making of counterfeit instruments (or conspiracies to do so), such a construction is not supported by the ordinary meaning of the words. The Supreme Court, discussing the phrase "relating to" in the context of the Airline Deregulation Act of 1978, observed that the dictionary definition of the words is expansive: " 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.' " *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) (quoting Black's Law Dictionary 1158 (5th ed.1979)); *see also Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (applying similar "broad common-sense meaning" to the phrase "relate to" as used in ERISA (internal quotation marks omitted)). This court has similarly recognized that the phrase "relating to" is deemed synonymous to "in connection with," "associated with," "with respect to," and "with reference to." *Coregis Ins. Co. v. Am. Health Found., Inc.,* 241 F.3d 123, 128–29 (2d Cir.2001) (interpreting insurance contract). The BIA has also ascribed broad meaning to the phrase, noting that "[t]he phrase 'relating to' . . . has long been construed to have broad coverage" and that "Congress intended to give inclusive meaning in the immigration laws to the phrase 'relating to.' " *In re Beltran,* 20 I. & N. Dec. 521, 525–26 (B.I.A.1992) (construing phrase in the predecessor to 8 U.S.C. § 1227(a)(2)(B)(i), pertaining to convictions "relating to a controlled substance"). Accordingly, we decline to construe "relating to" so narrowly as to limit subsection (R) only to counterfeiting offenses involving the actual creation of counterfeit instruments or to conspiracies to engage in such counterfeiting.

In so holding, we join the Ninth Circuit, which in *Albillo–Figueroa v. INS*, 221 F.3d 1070, 1073 (9th Cir.2000), rejected the argument that a conviction under 18 U.S.C. § 472 for possession of counterfeit United States obligations was not a crime relating to counterfeiting under 8 U.S.C. § 1101(a)(43)(R). As that court explained, the use of the broad phrase "relating to" in subsection (R) "necessarily" signaled Congress's intent to cover "a range of activities beyond those of counterfeiting or forgery itself."[14] *Id.* To hold that the possession or utterance of counterfeit securities with intent to deceive does not constitute an offense relating to counterfeiting would be to "read[ ] the term 'relating to' out of" subsection (R). *Id.* We agree. Section 513(a), like § 472, is hardly "a generic crime." *Id.* at 1074. Both statutes penalize the knowing use or possession of counterfeit securities as severely as the making of such securities in order "to discourage counterfeiting through the criminalization of the use of its end product." *Id.* at 1073. As such, the prohibitions on utterance or possession of counterfeit instruments, no less than the prohibition on making such instruments, plainly "relate to" counterfeiting.

Kamagate asserts that such a conclusion is at odds with two decisions of the BIA, *In re Espinoza–Gonzalez*, 22 I. & N. Dec. 889 (B.I.A.1999), and *In re Batista–Hernandez*, 21 I. & N. Dec. 955 (B.I.A.1997). He submits that these cases support his argument that a crime relates to counterfeiting only if a necessary element of its proof is the making of or intent to make counterfeit instruments. We disagree. In *Batista–Hernandez*, the BIA considered whether an alien's conviction as an accessory after the fact to a drug crime, *see* 18 U.S.C. § 3,[15] "related to" the underlying drug crime or to the crime of obstruction of justice for purposes of qualifying as an aggravated felony. *Compare* 8 U.S.C. § 1227(a)(2)(B)(i), *with* *id.* § 1101(a)(43)(S). The BIA concluded that because the conduct proving the accessory offense occurred "after the completion" of the drug crime, it bore no relationship to that offense except insofar as it obstructed the principal's apprehension and prosecution. *In re Batista–Hernandez*, 21 I. & N. Dec. at 960. Accordingly, the § 3 violation was properly deemed an offense relating to obstruction of justice. *See id.* In *Espinoza–Gonzalez*, the BIA considered whether another generic crime, misprision of a felony, 18 U.S.C. § 4,[16] related to obstruc-

---

14. The statutory scheme relating to counterfeit securities and obligations of the United States prohibits the making of such securities in 18 U.S.C. § 471 and the utterance or possession of such securities in § 472. The penalties for the offenses are uniformly severe: a maximum prison term of twenty years. As already noted, no such statutory division pertains to counterfeit securities of a state, local, or private entity. A single statute, § 513(a), proscribes the making, utterance, or possession of such counterfeit securities with violators facing a maximum ten-year term of imprisonment.

15. Title 18 U.S.C. § 3 states: "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to

hinder or prevent his apprehension, trial or punishment, is an accessory after the fact."

16. Title 18 U.S.C. § 4 states: "Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States [is guilty of misprision]." Mere silence is insufficient to establish misprision. Rather, the prosecution must prove that "(1) the principal committed and completed the alleged felony; (2) defendant had full knowledge of that fact; (3) defendant failed to notify the authorities; and (4) defendant took steps to conceal the crime." *United States v. Cefalu*, 85 F.3d 964, 969 (2d Cir. 1996).

tion of justice and concluded that it did not because a person could commit misprision without the "critical element" of obstruction, an intent to interfere with the process of justice. *In re Espinoza–Gonzalez,* 22 I. & N. Dec. at 894.

Applying the rationale of these decisions to this case, we adhere to our conclusion that a § 513(a) conviction for utterance or possession of counterfeit securities qualifies as an offense relating to counterfeiting. Preliminarily, we note that to the extent all elements of a crime must be proved beyond a reasonable doubt to secure a conviction, the BIA's use of the term "critical element" may be more confusing than helpful. The term "critical element" is, at best, a shorthand reference to that element of a crime that identifies it as within the definition of a particular aggravated felony under 8 U.S.C. § 1101(a)(43). Viewed in this light there can be no question that the element of § 513(a) requiring proof of an instrument "that purports to be genuine but is not, because it has been falsely made or manufactured in its entirety," 18 U.S.C. § 513(c)(1), identifies that · crime as one relating to counterfeiting. Indeed, this element must be proved to establish guilt whether the particular § 513(a) charge is the making of such an instrument, its utterance, or its possession. Moreover, if this element is proved, the possible penalty for these offenses is the same because the proscribed activities all promote the harm of counterfeiting.

■■■■ Accordingly, we conclude that any violation of 18 U.S.C. § 513(a) qualifies as an offense relating to counterfeiting and, thus, as an aggravated felony under 8 U.S.C. § 1101(a)(43)(R). Further, because a substantive offense under § 513(a) qualifies as an aggravated felony under § 1101(a)(43)(R), we also conclude that a conspiracy to violate § 513(a) qualifies as

an aggravated felony under § 1101(a)(43)(U) without regard to whether, under the particular factual circumstances of the given case, the conspirators could have achieved their substantive objective.

### Conclusion

To summarize, we conclude that (1) utterance or possession of counterfeit securities in violation of 18 U.S.C. § 513(a) qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43)(R), and (2) a conspiracy to utter or possess counterfeit securities in violation of § 513(a) qualifies as an aggravated felony under § 1101(a)(43)(U). Because Kamagate's 1998 conviction for conspiring to violate § 513(a) thus made him removable under § 1101(a)(43)(R) and (U), he is not entitled to have that order vacated. The judgment of the district court in favor of respondents is AFFIRMED.